OPINION OF THE COURT
Harold Silverman, J.
Defendant is charged with robbery and unlawful imprisonment. During his cross-examination of People’s witness, Detective D’Allessio, defense counsel sought to elicit information that a witness to the crime, one Ahmed Sulley, had failed to identify defendant as one of the perpetrators of the robbery. It was conceded by both sides that Mr. Sulley was now unavailable. The People objected to the proffered testimony as hearsay.
The People further stated that Mr. Sulley had told Detective D’Allessio that he had been threatened and warned not to testify by parties whose identity he would not divulge. The People contended that if the defense was allowed to proceed with cross-examination as to the failure *573 to identify then the People should be allowed to explore on redirect any threats that Mr. Sulley mentioned to Detective D’Allessio. Defense counsel objected to this on the grounds that absent any showing that the threats in question had been made by defendant or one of his alleged coconspirators, any hearsay testimony regarding the purported threats would be irrelevant to the case and highly prejudicial to defendant.
The proffered hearsay testimony is relevant and highly probative since the People’s case against the defendant rests on the testimony of a single eyewitness, Mr. Abu Oussman, who had a limited ability to observe the defendant. Thus any evidence of the failure of another eyewitness to identify the defendant as a perpetrator would weigh heavily in the jury’s deliberation. It falls upon this court to determine if the proffered testimony of Detective D’Allessio is hearsay and if so whether it should nevertheless be admitted into evidence. Furthermore, if the said testimony is admitted, should the People be allowed to explore the question of any threats made to Mr. Sulley which might have inhibited his identification.
In the broadest terms, the leading authorities agree that hearsay consists of any out-of-court statement offered for the truth of the fact asserted in the statement. (Richardson, Evidence, § 200; Fisch, NY Evidence, § 756; 5 Wig-more, Evidence, § 1361.) The evidence in question must therefore be classified as hearsay. Detective D’Allessio’s testimony as to Mr. Sulley’s statement is offered not merely to show that the statement was made but as evidence of the underlying facts, i.e., that another witness to the crime was in fact unable to identify defendant. In People v Bolden (58 NY2d 741) Judge Gabrielli in a concurring opinion stated that negative identification testimony is not hearsay where offered to prove only that the eyewitness possesses the ability to distinguish the particular features of the perpetrator. Here the defendant is not concerned primarily with Mr. Sulley’s ability to distinguish but rather with his failure to identify the defendant.
Nor does Mr. Sulley’s statement come under any of the recognized exceptions to the hearsay rule. It is not part of the res gestae of any legally significant act nor a spontane *574 ous or excited utterance nor a declaration against interest. Nor can his failure to identify be regarded as conduct rather than statement. Even if Mr. Sulley made no statement his act of not identifying the defendant would be an act performed “solely for the purpose of communicating” and any testimony by Detective D’Allessio concerning it would constitute hearsay. (Fisch, NY Evidence, § 759, p 450.)
At the heart of the hearsay rule is the high value placed on cross-examination as a tool for unearthing the truth. The leading authority states, “The theory of the hearsay rule * * * is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination.” (6 Wig-more, Evidence, § 1766, p 250.) While the need for and utility of cross-examination has never been seriously challenged, nevertheless, courts have always recognized exceptions to the hearsay rule. The need for such exceptions is well articulated by Wigmore: “No one could defend a rule which pronounced that all statements thus untested [by cross-examination] are worthless; for all historical truth is based on un-cross-examined assertions; and everyday’s experience of life gives denial to such an exaggeration. What the Hearsay rule implies — and with profound verity — is that all testimonial assertions ought to be tested by cross-examination, as the best attainable measure; and it should not be burdened with the pedantic implication that they must be rejected as worthless if the test is unavailable.” (1 Wigmore, Evidence, § 8c, p 278.)
Thus it was that the exceptions to the hearsay rule grew, but Wigmore’s cautionary language to the contrary, the rule itself has often been applied in a pedantic and wooden manner and probative and reliable testimony has often been excluded merely because it did not qualify under one of the recognized exceptions to the hearsay rule. To make matters worse the exceptions themselves were often rigidly construed. Thus much time has been spent considering whether challenged documentary evidence is a “business entry” or whether a statement is sufficiently “spontane *575 ous”. Such effort would have been better directed towards analyzing the value of the evidence itself.
The reason for adopting a highly technical approach is understandable. The more a court applies a rigid and detailed set of rules the less likely it is to commit reversible error. This approach, however, does not comport with the real purpose of the court — to determine the truth in order to achieve a just result. Furthermore, such an approach ignores the rationale underlying the existing hearsay exceptions. As Judge Learned Hand pointed out in Merriam Co. v Syndicate Pub. Co. (207 F 515) the basis for all exceptions to the hearsay rule is, first, that the proffered evidence be necessary, i.e., that unless the hearsay is admitted the facts it brings out may otherwise be lost, and, second, that it be trustworthy.
The wrongheaded application of the hearsay rule has led one commentator to state: “[T]he law governing hearsay is a 'conglomeration of inconsistencies’ and the ‘[Refinements and qualifications within the exceptions only add to the irrationality’”. (Fisch, NY Evidence, § 765, p 455.)
Similar criticism has resulted in sweeping change in the Federal law governing hearsay. In Dallas County v Commercial Union Assur. Co. (286 F2d 388, 397), the court stated: “There is no procedural canon against the exercise of common sense in deciding the admissibility of hearsay evidence.” The court thereupon admitted an old newspaper account of an incident into evidence despite the court’s determination that the article in question did not qualify under either the ancient document or business entry exceptions to the hearsay rule.
This commonsense attitude on the part of the Federal courts led to congressional modification of the rules of evidence. Under rules 803 and 804 of the Federal Rules of Evidence (in US Code, tit 28, Appendix) the following is not excluded by the hearsay rule: “A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reason *576 able efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence”. (Federal Rules of Evidence, rule 803, subd [24]; rule 804, subd [b], par [5], in US Code, tit 28, Appendix.)
This clause codifies the developing trend in the Federal courts of admission of hearsay evidence which was both needed and reliable and which did not otherwise qualify for admission under any of the recognized hearsay exceptions. It is a direct response to the criticisms of the application of the hearsay rule. (11 Moore, Federal Practice, § 803 [24] [7].)
The New York courts, particularly in civil litigation, have also moved away from a wooden application of the hearsay rule. Judge Fuld in his concurring opinion in Fleury v Edwards (14 NY2d 334, 341) stated “The common law of evidence is constantly being refashioned by the courts of this and other jurisdictions to meet the demands of modern litigation. Exceptions to the hearsay rules are being broadened and created where necessary * * * Absent some strong public policy or a clear act of pre-emption by the Legislature, rules of evidence should be fashioned to further, not frustrate, the truth-finding function of the courts in civil cases.” (See, also, Mihelis v Trend Serv. Corp., 89 Misc 2d 220.)
In Fleury (supra) Judge Fuld implies a distinction between civil and criminal cases. Such a distinction is necessary in view of the additional rights accorded a defendant in a criminal case. Nevertheless, the court in a criminal trial also functions to ascertain the truth and not merely to apply ritualistic rules of evidence. According to the United States Supreme Court this is especially true where the proffered evidence is of an exculpatory nature. Failure to admit such evidence is viewed as denial of due process. In Chambers v Mississippi (410 US 284) the defendant was accused of the murder of a policeman during a riot. Another individual also present at the riot confessed to the crime to at least three other individuals. There was other circumstantial evidence linking this second individual to the crime. Unlike New York, Mississippi did not recognize an exception to the hearsay rule with respect to declara-
*577 tions against penal interest. Therefore, the trial court excluded the proffered testimony of the three individuals as hearsay. In addition, the court applied other rules of evidence in a manner that hindered the defense. The Supreme Court reversed and remanded directing the trial court to, inter alia, permit the testimony of the three witnesses .to the confession. The court stated: “In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.” (Chambers v Mississippi, supra, p 302.)
The above discussion should make it clear that the current state of the law forbids a doctrinaire application of the hearsay rule. This policy applies a fortiori where an overly technical approach would impinge on defendant’s due process rights. When confronted with hearsay evidence the court must in the absence of legislative guidance make an ad hoc determination as to the admissibility of the proffered evidence. In making this determination the court should not exercise whimsical or unfettered discretion. Instead the court should consider the following factors:
(a) Is the evidence material and relevant to a central issue in the case or is it collateral?
(b) Is the proffered hearsay probative of a disputed fact or would it be merely cumulative.
(c) What is the form of the hearsay, i.e., does the witness claim to have heard the ultimate declarant or is his information third-party hearsay.
(d) Is the witness credible and disinterested or is there independent corroboration of his testimony.
(e) Did the declarant of the statement have firsthand knowledge of the facts?
(f) Has the proponent of the hearsay made reasonable attempts to procure the attendance of the declarant or has the proponent in fact prevented the declarant from testifying or procured or attempted to procure his absence.
(g) Is the right of the party against whom the hearsay is offered to cross-examine or otherwise controvert the evidence protected as far as possible?
(h) Would the admission of the procured hearsay otherwise serve the interests of justice?
*578 It is not the import of this opinion that the consideration of the above factors should be done at a separate hearing. The criminal process is already overburdened with hearings that often serve simply to delay and at times thwart justice. In the instant case the court made its ruling at a “side bar” conference brought on by defense counsel’s offer of proof. This seems to be the most expeditious manner of dealing with the matter.
Applying the suggested analysis to this case we find the proffered hearsay testimony to be relevant and material to the main issue of the case. Defendant had been arrested for participation in the armed robbery of a gas station. He was identified by Mr. Oussman, an employee of the gas station who was present at the robbery. Mr. Oussman admitted that he had only a limited ability to observe the perpetrator for a period of no more than five minutes and that the perpetrator was wearing a hat and dark glasses at the time. He also stated that the perpetrator had bushy hair, a beard and mustache whereas at the time of the identification defendant had short hair, a mustache and no beard.
As stated above, testimony that another witness to the robbery was unable to identify defendant at a lineup would be extremely probative given the facts of this case. Moreover, the fact of the nonidentification would be lost to the trier of fact if the hearsay is not admitted since neither party is able to locate Mr. Sulley and there are statements on the record that he may have returned to his native Africa.
As to the form of the hearsay the witness observed the actions of the ultimate declarant at the lineup and is testifying based on his observation. Moreover, Detective D’Állessio is a credible witness who would have no motivation whatsoever to fabricate a story to aid defendant. The declarant at the time was speaking of his own ability to make an identification of which there can be no better witness than he.
The same witness who heard Mr. Sulley state that he could not identify the perpetrator at the lineup also states that Mr. Sulley complained that he was threatened by an unidentified person and warned not to testify. Detective D’Allessio also asserts that at the lineup Mr. Sulley *579 seemed very nervous. He gave only a cursory glance to the individuals in the lineup and then stated that he was unable to make an identification. These actions are consistent with Mr. Sulley’s declaration that he had been threatened. Such testimony would tend to cast doubt on Mr. Sulley’s proclaimed inability to make an identification.
The defense objects that such testimony would be prejudicial to his client there being no evidence that said threats were made by or on behalf of defendant. The court will nevertheless permit this testimony. In the first place, had Mr. Sulley been a witness, the People would have been able to explore the issue of threats and the question of his state of mind during the lineup. As stated above the court should protect the right of the party against whom the hearsay is offered to controvert the import of the hearsay testimony. Here we have the same declarant and the same witness. If Detective D’Allessio is competent to testify as to those statements of Mr. Sulley which tend to damage the People’s case he is also competent to testify as to actions or statements of Mr. Sulley which might cast a different light on his alleged inability to make an identification.
Even if this were not the case Detective D’Allessio would be competent to testify as to Mr. Sulley’s statements as to his state of mind (i.e., his fear stemming from the alleged threats) under a long-standing, existing exception to the hearsay rule. (Provenzano v Sam, 23 NY2d 256; Brown v Nassau Elec. R.R. Co., 213 App Div 834; Matter of Newcomb, 192 NY 238; Hine v New York El. R.R. Co., 149 NY 154.) Detective D’Allessio could also testify as to Mr. Sulley’s actions at the lineup (e.g., his fleeting glance at the lineup) since this would not constitute hearsay. Nevertheless, defendant’s point is well taken that such testimony might create undue prejudice against the defendant and the court will follow any such testimony with limiting instructions to the jury that it is to consider any testimony as to threats only for the purpose of their effect on Mr. Sulley’s ability to make an identification.
The holding of this court is that in the interests of justice the defense will be able to offer into evidence testimony from Detective D’Allessio concerning Mr. Sulley’s inability to identify the defendant at a lineup. If such testimony is *580 elicited the People will then be allowed to question Detective D’Allessio on Mr. Sulley’s allegation of threats, his fearful state of mind and his conduct at the lineup. However, the court will give appropriate limiting instructions to the jury concerning such testimony.