■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SOLOMON CLARK, Appellant.—Judgment, Supreme Court, New York County (John A.K. Bradley, J.), rendered May 26, 1987, convicting defendant, after a jury trial, of murder in the second degree and criminal possession of a weapon in the third degree, and sentencing him to concurrent terms of imprisonment of from 25 years to life and 3½ to 7 years, respectively, unanimously affirmed.

As cab driver "John Smith" was stopped at the light at 115th Street and Lenox Avenue at about 12:30 A.M. on October 23, 1985 he watched two men struggle. When the two men separated, the one who was wearing a blue coat fired a gun. The shooter ran a short way up the street, turned around, returned to his victim, and fired a second shot, ignoring Smith's exhortation not to shoot. The shooter then ran into the nearby housing projects. An hour and a half or two hours later, Smith identified the shooter at a lineup. Smith did not

identify defendant at the trial as the shooter, but said that the only difference between defendant and the shooter was the length of defendant's hair and his glasses.

At the time of the shooting Helen Craig was also stopped at a light on her way to St. Luke's Hospital. Craig recounted that she caught sight of a man running up the street with a gun in his hand. The man was dressed all in black from head to toe. After some more time elapsed, Craig heard a shot and drove off through the light. When she reached the hospital, she called 911. Craig remembered going to a lineup, but could not remember if she had picked out defendant. Craig did not identify defendant at the trial and said that the jacket recovered from defendant was not the brown jacket she had seen. Craig also testified that she had been asked to view the lineup even though she had told the police that she could not identify the shooter.

Detective Dannegger testified that Smith identified defendant, number four in the lineup, as the person with the gun from 115th Street and Lenox Avenue. On cross-examination Dannegger testified that Craig viewed a lineup, but objections by the prosecutor blocked Dannegger from answering the questions about whom Craig had identified.

Officer Vincent Kostolni testified that he saw defendant and another person running from the scene of the shooting shortly after an ambulance crew reported that shots had been fired, one person was down, and two persons were running toward the projects. As Kostolni and his partner followed the pair in their unmarked car, Kostolni noted that defendant was running in a strange manner. When the officers' car pulled alongside the running pair, Kostolni saw a bulge under defendant's shirt. The pair split up, and Kostolni alone followed defendant. After defendant ran past Kostolni's car, Kostolni pursued defendant on foot. When Kostolni rounded some parked cars, he found defendant lying on the ground. Between two parked cars, several feet away, Kostolni found a .41 caliber revolver. Ballistics evidence showed that the two bullets that were removed from the deceased had been fired from that revolver. Kostolni testified at trial that his partner seized William Neal, the person who had been running with defendant.

Defendant's guilt was established beyond a reasonable doubt. Since it cannot be said that the only rational inference that can be drawn from the evidence is that the taxi driver eyewitness did not have a good view of defendant's face, the evidence supporting the verdict is sufficient to support defen-

dant's conviction *(People v Contes,* 60 NY2d 620). This witness's prompt identification of defendant at a lineup was based on a good view of the entire shooting. From his taxi stopped at a light, he saw the physical confrontation between the shooter and victim, and watched as the shooter fired one shot, ran a short way and returned to fire a second shot, and then fled. In addition, the murder weapon, which ballistic evidence linked to the homicide, was found on the ground just several feet from where defendant was seized shortly after the shooting and after defendant unsuccessfully attempted to elude the police. We also find it understandable that the jury credited the identification testimony even though the witness did not notice lettering on defendant's jacket *(People v Adams,* 165 AD2d 760, *lv denied* 76 NY2d 983; *People v Mosley,* 112 AD2d 812, 814, *affd* 67 NY2d 985).

It was not error for the trial court to bar Dannegger from testifying about Craig's failure to make an identification at the lineup she viewed. The proffered testimony was hearsay that was not critical to the defense that Neal, not defendant, committed the shooting. While defendant now claims that the fact of the misidentification standing alone is important, that position is untenable. As noted earlier, Craig did not assert that the person she identified was the shooter. Accordingly, Craig's misidentification did not show that defendant was not the shooter. Rather, it was proof that Craig could not make an identification of the shooter, a point certainly made without the detective's testimony. Further, unlike the circumstances found in *People v Ortiz* (119 Misc 2d 572), Craig not only told the jury that she could not say who she had picked out at the lineup, but she failed to identify defendant at the trial.

Undoubtedly, a statement by the detective that Craig did not identify defendant would have been singularly trustworthy, but unlike the circumstances in *Chambers v Mississippi* (410 US 284), the excluded testimony was not offered as direct proof that the person who was identified by Craig was the actual killer. In any event defendant's claims that rest on the Federal and State Constitutions have not been preserved, since at trial, defendant argued that the proffered testimony was not hearsay or was admissible as a prior inconsistent statement. Further, the claim that rests on the proposition that the defense should have been afforded the same right as the People to use hearsay to prove its case has no merit, because the defense did not advance a meaningful claim at trial that Craig's out-of-court identification was reliable. Indeed, Craig's own testimony that she had not seen the gun-

man's face established just how unreliable her lineup identification was. Under CPL 60.25, a witness must believe at the time of trial that the out-of-court identification that was made was accurate, despite a present inability to make an identification (People v Jamerson, 68 NY2d 984). Craig, however, at the time of trial, made plain her feeling that the out-of-court identification was anything but accurate, testified that she picked out someone from the lineup merely on the basis of that person's medium build.

In other words, third-person proof via Dannegger that Craig did not identify defendant was not reliable proof that defendant was not the shooter. While defendant argued at trial that the person that Craig had seen running had been wearing a brown jacket wind breaker, a jacket unlike the one defendant was wearing when he was seized, defendant did not, and could not, urge that the person Craig had identified at the lineup was that person. No connection was established between the fillers and the persons who were running at the scene. Accordingly, to the extent that a misidentification of a filler might be likened to a "negative identification" procedure, i.e., one in which the witness is asked to view persons who are not suspects, the similarity is irrelevant to the circumstances presented. While defendant did make an attempt to show that Craig was able to see the actual shooter, her misidentification of a filler was not proof of Craig's ability to distinguish the features of the shooter in the circumstances of this case (see, People v Bolden, 58 NY2d 741, 742-743 [Gabrielli, J., concurring]).

It was plain to the jury that only one witness identified defendant. The prosecutor conceded as much in summation, and the court charged the jury that the case rested on the identification of a single witness. In his pro se brief defendant argues that less than candid testimony by Dannegger suggested that Craig had in fact identified him. However, Dannegger's failure to remember that Craig could have picked out another individual displaying the number 4 could have been accurate. There was no showing that defendant, who occupied position number four in the lineup that Smith viewed, occupied the same position in both lineups.

The court did not belittle counsel in the eyes of the jury when it sustained the prosecutor's objection to counsel's argument that Craig had not selected defendant from the lineup. Moreover this isolated incident is not grounds for reversal. Counsel immediately asked the jury to decide whether defendant or Neal had committed the shooting. Counsel urged that

Craig was able to give a description of the person she saw fleeing. Accordingly, and in light of the prosecutor's concession that there was only one eyewitness and the court's comments in its charge to the same effect, the jury undoubtedly recognized that in weighing the evidence of Smith's identification of defendant, it had to consider Craig's inability to identify defendant.

Defendant's remaining *pro se* arguments are unpreserved or of no merit. Concur—Murphy, P. J., Carro, Milonas and Kassal, JJ.