Gabrielli, J.
Two New York City policemen, defendant Richard Bell and one Francis Reilly, were charged with conspiracy to steal more than four pounds of cocaine from the occupants of a Manhattan hotel room, as well as other related crimes^ Following a jury trial in the Extraordinary Special and Trial Term of the Supreme Court, New York County, defendant and Reilly were convicted of attempted possession of a dangerous drug in the first degree (Penal Law, §§ 110.00, 220.23, repealed L 1973, ch 276), burglary in the first degree (Penal Law, § 140.30) and attempted grand larceny in the second degree (Penal Law, §§ 110.00, 155.35). Shortly thereafter, Reilly died in an unrelated automobile accident.
Concluding that the totality of errors at the trial were prejudicial as a matter of law, the Appellate Division reversed Bell’s conviction and ordered a new trial. By leave of a Justice of that court, the Special State Prosecutor appeals.
The principal issue presented is whether the charge to the jury was so prejudicial to the defense as to warrant reversal of defendant’s conviction.
The People’s case rested upon the testimony of Gilberto Reyes, a convicted felon and an unaddicted drug pusher, and upon tape recordings of conversations between Reyes, the defendants and certain undercover officers. Reyes testified that he met Reilly in 1970 and that, for the next three years, Reilly periodically extorted money and drugs from him under t}ie threat of arrest and prosecution. He recalled seeing Bell with Reilly on one of those occasions.
*119 On March 7, 1973, unbeknown to Reilly and Bell, Reyes was arrested and charged with possessing five eighths of a kilogram of cocaine, a class A felony. Thereafter, the Special State Prosecutor contacted Reyes and offered to recommend that he be given a sentence of probation in exchange for a guilty plea, on the condition that Reyes co-operate in the arrest and prosecution of his "tormentors”. Reyes agreed and, on March 20, he was released on bail.
Two weeks later, working in conjunction with the Special State Prosecutor, Reyes contacted Reilly and, in a surreptitiously tape-recorded conversation, informed Reilly that two kilograms of cocaine and $9,000 in cash were in the hands of drug dealers staying in room 418 of a downtown Manhattan hotel. Without clearly committing himself to any action, Reilly agreed to meet with Reyes that evening. At this meeting which was not taped, Reilly stated, according to the trial testimony of Reyes, that he was going to "hit the place” and promised to give Reyes an eighth of a kilogram of cocaine if the drugs and money were in the hotel room as Reyes claimed.
Meanwhile, one female and two male undercover police officers, posing as narcotics dealers, were stationed inside the hotel room, which was made to appear as the center of a drug-cutting operation. A plastic bag containing a kilogram of white powder was placed in an open suitcase on a bed, a similar bag was opened on a table and tinfoil packets, small plastic bags, measuring spoons, scales and other narcotics paraphernalia were strewn about. Also, secreted in the room was electronic recording apparatus.
Tape recordings were introduced at the trial. These recordings, amplified by the testimony of the undercover officers, show that at approximately 8:45 p.m. Reilly and Bell forcefully entered the room with their guns drawn. According to the recordings Reilly and Bell then proceeded to interrogate the occupants as to their identity and the source of their supplies. The two officers began to place all the evidence into a suitcase, save "the cut stuff” which Reilly said he wanted to "send into the lab”. Later, one of the undercover officers "pleaded” with Reilly to release the female officer because "she’s my woman”; and Reilly refused to do so. Another undercover officer asked, "Can’t we talk?” and Bell answered, "No”. Eventually, Bell told the occupants that he was taking them in and, then, both Reilly and Bell made a thorough search of the room. Shortly *120 thereafter, Reilly left and was arrested by a police backup team outside the building. At the same time, a police support team posted inside the building burst into the room and arrested Bell.
Clearly, the recordings alone do not, as the Special Prosecutor would have us believe, independently support a finding that Bell was guilty as charged. As detailed, the recordings indicate only that Bell accompanied Reilly to the subject room and, at most, upon entry comported himself in an equivocatory manner. True, Bell never identified himself as a police officer, expressly informed the, .occupants they were under arrest or advised them of their rights, and was not Reilly’s police partner or even working in the precinct to which either was assigned. Nevertheless, the recordings show that Bell refused a bribe, that he informed the occupants that he was taking them in and, further, that he made a thorough search of the room even though some drugs were found in plain view. It follows, therefore, that Reyes’ testimony which connects Bell with Reilly on one occasion and which charges Reilly with having an illicit purpose for entering room 418 is crucial to establishing Bell’s culpability.
The defense was based primarily upon showing Reyes to be incredible. After detailing for the jury Reyes’ prior convictions, prior bad acts and self-interest in testifying and assisting the prosecution, the defense brought forth numerous inconsistencies in Reyes’ testimony, successfully demonstrating, as the Special Prosecutor concedes, that in at least 10 different instances in his direct testimony, Reyes contradicted testimony he had given before the Grand Jury or at the suppression hearing.
We agree with the Appellate Division that the charge to the jury contained substantial errors; and, hence, the order of that court should be affirmed. Trial courts are entrusted "to give adequate and balanced instructions to the jury in a criminal case” (People v Johnson, 6 AD2d 181, 183). A charge which ignores or unfairly discredits the contentions of either the People or the defense cannot be countenanced, particularly where, as in this highly controversial case, there are closely contested factual issues. As this court stated in People v Mendes (3 NY2d 120, 121), care must be taken to guard against "the possibility that the stated opinion of the trial court or even the suggestion of an opinion might be seized upon by the jury and eventually prove decisive”. We are *121 required to hold that the jury charge in this case was prejudicial to the defense and thus a new trial is necessary.
After instructing the jury as to the effect of a witness’ character on his credibility, and without ever mentioning Reyes by name or giving a single illustration as to his impeachment on cross-examination, the trial court, intimating a belief in the credibility of Reyes, improperly charged that the jury should not "lightly reject” his testimony and should ask themselves "whether his testimony is or is not corroborated by other evidence that is undisputed”. The error was compounded by giving the jury examples of what was considered to be undisputed, corroborating evidence and, further, by reiterating the earlier portion of the charge, that "[e]ven though a witness’ character may leave much to be desired”, his credibility is to be judged on all the evidence, "particularly evidence as to the truth of which there may be little or no question”.
Also erroneous was the trial court’s treatment of the crucial issue of intent. The court properly charged that the principal factual issue was whether defendant and Reilly, when they entered the hotel room, were attempting to arrest drug sellers or were stealing or attempting to steal from drug sellers. Having thus correctly framed the question, the court proceeded to affect the resolution of the issue by recounting facts favorable to the prosecution and ignoring countervailing evidence favorable to the defense. Specifically, the court charged:
"To answer the question I suggest that you consider all of the evidence which has been presented in the trial. Consider whether the defendants Reilly and Bell were or were not partners in the Police Department on April 5, 1973.
"Consider whether the defendants Reilly and Bell were or were not assigned to the same precinct in the Police Department on that date.
"Consider whether the defendants were even assigned to precincts in the same borough on that date.
"Consider whether the defendants or for that matter even one of them were assigned to the precinct in which the * * * Hotel is located.
"Consider whether the defendants or for that matter even one of them was on duty at the time of the alleged conduct.”
*122 And a bit later in the charge the court rhetorically asked the jury, "Are you satisfied beyond a reasonable doubt of any of the following” and then marshaled facts favorable only to the prosecution, viz:
"The defendants Reilly and Bell were not partners. The defendants Reilly and Bell were assigned to different precincts. The defendants Reilly and Bell were not assigned to the precinct covering the area in which the * * * Hotel was located. The defendants Reilly and Bell had no search warrant. The defendants Reilly and Bell entered Room 418 of the * * * Hotel with guns drawn.”
The rhetorical questions posed by the Trial Judge during the charge were of such a nature as to be interpreted as indicating a communicable disbelief of the defendant’s testimony; . and, under the circumstances of this case, may not be ignored because of the consequent effect produced on defendant’s right to a fair trial.
Finally, in addressing the main defense contention, the court failed to marshal any facts favorable thereto and instead, asked the jury to question the credibility of their announced motive and positions according to the testimony they offered, viz:
"The defendants contend that they were motivated by a desire to receive credit for effecting a big narcotic arrest. In assessing the truth of this contention, ask yourselves whether they actually could have expected commendation for an arrest effected in violation of the provisions of the Patrol Guide, that is, in a precinct in which they had absolutely no business to be operating, assuming, of course, that you find such to be the facts.
"Also, ask yourselves whether they actually could have expected commendation for an arrest when the seizure would have had to be suppressed as being unconstitutional, and any resulting prosecution dismissed, assuming, of course, that you find such to be the facts.
"In making the determination as to whether on April 5, 1973 the defendants Reilly and Bell were attempting to arrest drug sellers in Room 418 of the * * * Hotel, or whether they were stealing or attempting to steal drugs from drug sellers in that room, you are to use your *123 common sense. You do not leave your common sense outside the jury room.”*
In these circumstances where there were closely contested issues of fact and where the resolution of those issues depended primarily upon the credibility of a witness whose character, as the People concede, was "unsavory”, we can conclude only that the imbalance in the jury charge substantially prejudiced the defense, thus requiring a new trial. No other issues need be addressed.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Füchsberg and Cooke concur.
Order affirmed.

 A lengthy, detailed exception was taken to the charge and specifically on the ground that it was prejudicial to the defense.