■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD BELL, Appellant.—Judgment, Supreme Court, New York County, rendered December 22, 1976, convicting defendant, after jury trial, of attempted

possession of a dangerous drug in the first degree (Penal Law, former § 220.23) and burglary in the first degree (Penal Law, § 140.30), and sentencing him to concurrent indeterminate terms of imprisonment of a maximum of seven years, is unanimously affirmed. The defendant was a police officer. Essentially the theory of the prosecution was that defendant Bell along with another police officer Reilly broke into a hotel room where they believed there were narcotics and cash, not intending to make an arrest nor perform a police function but to steal the narcotics and cash. In fact, the occupants of the room were undercover police officers engaged in an operation to catch corrupt police officers, the primary target apparently being Officer Reilly. Both Bell and Reilly were convicted on a previous trial. Reilly died during the pendency of the appeal. Bell's conviction was reversed for errors in the charge. *(People v Bell,* 45 AD2d 362, affd 38 NY2d 116.) On the retrial, Bell was again convicted and that conviction is now before us for review. As stated by the Court of Appeals on the previous appeal, the recordings of the break in alone do not independently support a finding that Bell was guilty; at most they indicate only that Bell "comported himself in an equivocatory manner" (p 120). Upon the present appeal, the chief error urged is the receipt into evidence of certain conversations prior to the break in between one Reyes, an informant working with the police, and Reilly. These statements were essentially statements by Reyes that there were narcotics and $9,000 in cash in a certain hotel room, a statement by Reilly that he was going to "hit" the room and that he would give Reyes some of the narcotics, that he was going to the Kilcullen Bar to get someone else, as well as a brief reference to a prior incident. Bell was not mentioned by name though the jury could infer from the subsequent events that Bell was the person whom Reilly was going to get at that bar. The parties and the Trial Justice treated the issue of admissibility as dependent on the coconspirator exception to the hearsay rule. That exception requires evidence outside of the allegedly hearsay conversations sufficient at least to establish a prima facie case of conspiracy though perhaps the scope of the conspiracy may be defined by the conversations once this prima facie case has been made. In the present case there was evidence dehors the allegedly hearsay out of court conversations that Reilly made an appointment to meet Reyes at 5 o'clock on the day in question preparatory to the proposed break in; that Reilly and defendant Bell had arranged to meet at a certain bar at 4:45; that although Bell lived on the east side of the city, and was purportedly going to go to dinner with Reilly and two young ladies on the east side, Bell went over to the west side with his date; Bell left his date with Reilly's date on the west side, Reilly and Bell telling the dates that they would be back in a half hour to three quarters of an hour; that if Reilly and Bell had intended to make an arrest instead of an illegal break in and theft, they could not possibly be back in that period of time; that Reilly and Bell broke into the hotel room; that the hotel room was not in the precinct in which either Reilly or Bell worked; that Reilly and Bell were not police partners and, indeed, not assigned to the same police precinct; that they were both off duty; that neither of them was assigned to either this investigation or to this arrest; that neither one of them made a report to the police department or to any other officer of their intention to make this raid; and that no arrangements were made for any backup team or police support. We think that this evidence was sufficient so that it could be found prima facie, that Reilly and Bell were engaged in a common criminal or illegal enterprise thus satisfying the predicate for the applicability of the coconspirator hearsay exception. We need not consider whether the Judge should have submitted to the jury

the question of whether there was prima facie evidence of conspiracy dehors the conversation as a condition of their considering the Reyes-Reilly conversations, or whether that was a matter for the Judge to decide. In fact, the Judge did submit that question for the jury. Defendant claims that it was error for the Judge to tell the jury that for the purpose of deciding this preliminary question of fact, as to their consideration of the conversations, that conspiracy need be established only by a preponderance of the evidence rather than beyond a reasonable doubt. We think the Judge stated the correct standard. (Carbo v United States, 314 F2d 718, 736-737; cf. People v Arnold, 34 NY2d 548, 549.) Of course the Judge made very clear to the jury that guilt of the crimes charged contained in the indictment must be proved beyond a reasonable doubt. We have thus far considered the admissibility of these conversations on the theory that was discussed by the parties and the Trial Justice—the coconspirator exception to the hearsay rule. However, it is not entirely clear that admissibility did depend on the coconspirator exception, for that exception only comes into operation if the statements would otherwise be barred as hearsay. (Anderson v United States, 417 US 211, 219.) Except for the passing reference to the earlier incident, it may well be that these statements were not inadmissible hearsay for they were not offered to prove the truth of the statements as such. (Anderson v United States, supra.) They were admissible essentially to prove that the statements were made (see Richardson, Evidence [10th ed], § 203; Fisch, New York Evidence [2d ed], § 761); or to prove the state of mind and intention of the declarant Reilly (Mutual Life Ins. Co. v Hillmon, 145 US 285; Richardson, §§ 205, 289; Fisch, §§ 997, 999). If this view is correct, then the coconspirator exception becomes irrelevant and the issue becomes merely whether these statements were relevant evidence (Anderson v United States, supra, p 221). In that connection we note that we do not have here, as frequently happens in conspiracy cases, a situation in which a defendant who does not himself physically participate in the substantive crime is sought to be held responsible for that substantive crime physically committed by someone else. Here the defendant Bell personally participated in the break in and attempted seizure. We have thus a simple case in which two men broke into a room intending to seize property that did not belong to them. The only question is whether this break in and attempted seizure were part of a police function. If not, it was plainly criminal. There is evidence that the intent of one of them, Reilly, was to commit a robbery rather than police action; he was accompanied in this break in and attempted seizure by the defendant Bell who participated in all respects in this illegal break in and attempted seizure; and there is other evidence, discussed above, that tends to show that Bell as well as Reilly knew they were not engaged in a police action but rather in an illegal enterprise, which thus tends to show Bell's criminal intent. We do not deem it necessary to discuss the other errors claimed. Concur—Kupferman, J. P., Lupiano, Silverman, Lane and Sullivan, JJ.