■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PAUL MELVILLE, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Richmond County (Owen, J.), rendered January 26, 1981, convicting him of assault in the second degree, upon a jury verdict, and imposing sentence. Judgment reversed, as a matter of discretion in the interest of justice, and new trial ordered. Defendant's conviction for assault in the second degree arose out of an incident which occurred during the early morning hours of June 28, 1978. The People's case was based primarily on the testimony of the complainant and her friend, both of whom were working in a late-night donut shop at the time of the crime. The complainant's friend testified that at about 4:15 A.M., two men, one of whom the witness identified as defendant, entered the premises for coffee. The men appeared to be drunk or high, according to the witness, and the one identified as the defendant was acting in a rowdy manner. The witness also noticed a tattoo of a rose on the defendant's arm. After the two men finished their coffee, defendant's companion left. Thereafter the complainant left the donut shop in the company of the defendant. The complainant returned 45 minutes later bleeding profusely from the skull. The complainant corroborated her friend's testimony and further testified that upon leaving the donut shop, she and the defendant walked to the front of a nearby restaurant in order to smoke some marihuana. Defendant refused her offer of the drug and instead advised her that he was interested in a sexual encounter. After the complainant refused, the defendant began slapping her and choking her, and pushed her backward against a guardrail. The complainant eventually fainted, and, upon reviving, walked back to the donut shop, bleeding from the head, whereupon she was taken to the hospital. About a year later, the complainant recognized the defendant in a bar, called the police, and had the defendant arrested. The defendant took the stand in his own behalf, and although he admitted having two tattoos, one on each arm, on the day of the crime, he categorically denied committing the crime or even knowing the complainant prior to his arrest. The testimony of the People's witnesses, while damaging, was not altogether free from doubt; indeed it was seriously impaired. Thus, the complainant admitted that immediately prior to the crime she had been smoking marihuana, in combination with various medications that she took to control her epileptic seizures, a course of action which may very well have impaired her perceptions. With regard to her companion, it was adduced at the trial that several hours after the incident, he went to the precinct to look at some photographs, picked out a photograph of someone who resembled the man that he had seen with the complainant and was later informed that he had selected the wrong photograph. He also recalled that the person depicted in the photograph was named Mark Cruz but could not recall whether the person depicted had tattoos. This information apparently disturbed the jurors, since during deliberations they asked whether the person depicted in the photograph had tattoos. After conferring with both counsel, the trial court advised the jury that both counsel stipulated that the photograph did not show tattoos. It appears from the record that defense counsel's attempts to secure the Police Department's compliance with a judicial subpoena directing production of the photograph in question, as well as other original police forms containing prior statements of the complainant, were unsuccessful and that counsel alerted the court to this fact at the close of the People's case. The totality of the evidence adduced at trial presented a sharp issue of credibility for the jury. (Indeed, defendant's first trial ended in a mistrial because of a deadlocked jury.) Under the circumstances, defendant was denied a fair trial by (1) the trial court's failure to grant, on its own motion, a short continuance to allow for the possible production of the subpoenaed materials; (2) the trial court's

marshaling of the evidence, wherein it referred solely to the People's case and totally neglected to advise the jury that defendant took the stand and denied committing the crime or that the testimony of the People's witnesses had been impeached in any way (see *People v Bell,* 38 NY2d 116; *People v Chambers,* 73 AD2d 976; *People v Davis,* 53 AD2d 870; *People v Ramsey,* 40 AD2d 837; *People v Curatolo,* 7 AD2d 996); and (3) the trial court's reference, in its charge on reasonable doubt, to "uneven" scales, which could very well have led the jury to believe that something less than guilt beyond a reasonable doubt would suffice to convict (*People v Fox,* 72 AD2d 146; *People v Cohen,* 61 AD2d 929). Titone, J. P., Mangano, Weinstein and Boyers, JJ., concur.