■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MELVIN WADE, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Richmond County (Owens, J.), rendered March 12, 1981, convicting him of rape in the first degree, sodomy in the first degree (two counts), sexual abuse in the first degree, and assault in the second degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law and the facts and as a matter of discretion in the interest of justice, and new trial ordered. The entire trial in this matter consisted of the testimony of the complainant, the defendant, and a detective who first observed the complainant on the morning following the incident in question. The proof established that on the evening of April 16, 1980 the complainant was with her girlfriend at a Manhattan discotheque waiting for a male friend to arrive when she met the defendant Melvin Wade. After waiting 45 minutes for her friend to arrive, the complainant went up to the defendant, who had volunteered earlier to take her home, and indicated that he could escort her to her apartment in Staten Island. The complainant and defendant left the discotheque together, took a cab to the Staten Island Ferry, rode the ferry across to Staten Island, and then took a second cab to her apartment, arriving there at approximately 11:30 P.M. Sometime after they entered the apartment they engaged in sexual activity for about two and a half hours. The complainant testified that while defendant was in the bathroom she attempted unsuccessfully to call the girlfriend she was with at the discotheque. She testified further that she did not call the police, scream for help or attempt to escape from the apartment. Defendant left the apartment at approximately 3:00 A.M. after complainant had called a cab for him. Some three hours after defendant left, the complainant woke up and dressed to go to work. On the morning ferry she met and spoke to the girlfriend she had been with at the discotheque and whom she claimed she had attempted to call during the night. Thereafter, complainant returned home and telephoned the police to report that she had been raped. When she was observed by the investigating detective there were bruises across her throat and her lips were swollen. The record contains no exhibits to show the extent of the bruises or swelling. As noted above, both the complainant and the defendant testified at the trial. Indeed, the only discrepancy between the defendant's version of the facts and the complainant's version of the facts concerns the issue of whether or not the complainant consented to the sexual activity with the defendant. At a *Wade* and *Huntley* hearing, complainant testified to the effect that her male friend would be upset and angry in that he would "yell and scream" if she did not wait for him at the discotheque. At trial, defense counsel was precluded from eliciting testimony from the complainant on cross-examination regarding her male friend's anger and from utilizing her prior testimony for impeachment purposes. Under the circumstances of this case, it is clear that the complainant's possible motive to falsely accuse the defendant of rape was critical to his defense. The precluded testimony bore directly upon the complainant's possible motive and defense counsel should have been allowed to use such testimony. Furthermore, Criminal Term charged the jurors that "if your minds are wavering, or the scales are even", the benefit of the doubt must be given to the defendant. This language was improper (see *People v Ortiz,* 92

AD2d 595; *People v Fox,* 72 AD2d 146; *People v Butler,* 67 AD2d 950), and could very well have led the jury to believe that something less than guilt beyond a reasonable doubt would suffice to convict (*People v Melville,* 90 AD2d 488). Thus, Criminal Term's limiting of the cross-examination of the complainant, coupled with the improper charge, constitutes reversible error (see *People v Crimmins,* 36 NY2d 230, 238) mandating a new trial. Gibbons, J. P., O'Connor and Niehoff, JJ., concur.

Weinstein, J., dissents and votes to affirm the judgment appealed from, with the following memorandum: In my view, there is no reasonable construction of the events in issue which supports the theory that the complainant's fear of her unidentified male friend's reaction motivated her to lie. Defense counsel, at a side bar conference, indicated his intention to question the victim regarding a statement that she had made to defendant regarding her male friend's anger if she did not wait for him at the discotheque. Defendant claims that this testimony was admissible and relevant since it would have explained her state of mind at the time she reported the rape and would have tended to show a motive to falsely accuse defendant, i.e., fear of incurring the wrath of this mysterious male friend. However, this reasoning seems logically inconsistent with the victim's testimony that the individual for whom she was waiting was not her boyfriend but "[j]ust a male friend" who was going to take her home. The absence of a possessive paramour is further evinced by defendant's own testimony: "Well, I asked her first of all, was she going to have any problems once she got home in terms of maybe another individual showing up or that she would make an excuse of some sort to the effect that I was specifically asking her if she wanted me to accompany her home solely for one particular purpose which was sexual. She gave me no indication that there would be any problems of that nature, boyfriend, unexpected husband showing up whatever and she accepted the invitation as far as I was concerned". As the People logically point out, the victim's easiest course of action to avert the wrath of her male friend would have been to simply make no mention of the incident or else deny that defendant had done anything other than see her home safely. Inasmuch as the defense never tendered proof as to either the nature of the relationship between the victim and the unidentified male friend or of how he could have learned of her sexual activity with defendant, the line of questioning embarked upon by the defense was irrelevant. When read in its proper context, it is apparent that the victim was merely anticipating the vocal exasperation of a person who makes a special effort to accommodate a friend only to find that that friend has already made alternative arrangements. This is vastly different from the fury of a jealous lover, the interpretation of this situation which the defense would have had the jury believe. Moreover, any statement made by the victim on the evening in question with reference to her male friend's anger would not be probative of her state of mind when she reported the alleged rape the next day. Accordingly, I conclude that the trial court's preclusion of this line of questioning was, in all respects, proper. As regards the charge, defendant maintains that the court erroneously advised the jurors that they could convict defendant if persuaded of his guilt by a mere preponderance of the evidence. Although the reference to wavering minds or even scales was technically improper (see *People v Ortiz,* 92 AD2d 595; *People v Melville,* 90 AD2d 488; *People v Fox,* 72 AD2d 146; *People v Butler,* 67 AD2d 950), the courts have generally refrained from reversing convictions where the charge, taken as a whole, properly defined the concept of reasonable doubt for the jury (see *People v Ortiz, supra; People v Patterson,* 76 AD2d 891; *People v Cohen,* 61 AD2d 929; *People v McCray,* 57 AD2d 632). In the instant case, the jurors were correctly instructed, just prior to the objectionable portion of the charge, that the prosecution bore the burden of proof throughout the trial and that each

element of the crime had to be proven beyond a reasonable doubt. Thus, the trial court's reference to wavering minds or even scales was clearly not the only gauge by which the jurors were instructed to evaluate the People's case. On the contrary, the charge in its entirety conveyed the proper standard. "[C]onvictions are not to be set aside because, on reflection in tranquility, better charges could have been composed" (*People v Yanik,* 43 NY2d 97, 100).