■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDMOND MOSLEY, Appellant.—Judgment, Supreme Court, Bronx County (Joseph DiFede, J.), rendered June 23, 1982, convicting defendant following a jury trial of robbery in the first degree (Penal Law § 160.15) and sentencing him to a term of 2 to 6 years, affirmed.

Defendant was convicted of a knifepoint robbery committed on January 7, 1982, at about 5:30 P.M., in a brightly lit elevator, at 280 East 161st Street, in The Bronx. Mary McNeil was on her way to her daughter's apartment, on the seventh floor of the building, when a 200-pound, 6-foot, black male, about 25 years of age, wearing thick glasses and an orange jump suit, forced open the elevator doors and, standing but one foot from complainant, held a knife to her throat and demanded her money: "Give me your money. I don't want to hurt you." Looking directly at defendant's face, she handed over her pocketbook and watched as he took $17 from her wallet. He stopped the elevator at the fourth floor and tossed complainant out into the hall. The robbery lasted about 10 seconds. The police were summoned and the above description was furnished by complainant. Two and one-half weeks later, complainant identified defendant in a police lineup and she made a positive in-court identification. Orville Kerr, a security guard at the building, also testified that, about one-half hour before complainant came to the lobby to report the robbery, he observed defendant in the lobby, wearing an orange jump suit.

The defense consisted of the testimony of defendant's mother that he did not own an orange jump suit, had a space between his front teeth, a tooth missing on the side of his mouth and wore an earring. The arresting officer had testified that the description furnished by complainant did not include any mention of the condition of the assailant's front teeth or whether he had a pierced ear.

The dissent concludes that defendant was deprived of his right to a fair trial (1) by the failure of the trial court to instruct the jury adequately on the issue of identification; (2) by the omission in the charge to the jurors that the prosecution had the burden of establishing each and every element of the crime by proof beyond a reasonable doubt; and (3) by an unfair and unbalanced marshaling of the evidence. To the contrary, the Trial Justice did instruct the jury that defendant was presumed to be innocent and that the burden was on the prosecution "to prove the charge against him by evidence beyond a reasonable doubt." The record clearly shows that the prime issue was identification and, in its charge, the court repeatedly instructed the jurors that they were to determine whether defendant was the person who had committed the knifepoint robbery—"the question is, was this man, this defendant, the one who did that?"

"Well, if you believe Mary McNeil's testimony that she was forced to give up property by the threatened use of a knife, again the question involved ultimately is, was this the man? Is this defendant the person who did this to Mary McNeil in the elevator of that building at or about 5:30 in the afternoon?"

Complainant was consistent in having identified defendant, both at the lineup and in court and she had more than a sufficient opportunity to observe him at close range, in the brightly lit elevator, during the robbery. Defendant was also identified by the security guard as having been in the lobby shortly prior to the crime. While the defense established that the description of defendant furnished by complainant following the crime did not include certain physical attributes and articles of clothing and there was further testimony by his mother that defendant did not own an orange jump suit, the credibility of the witnesses and the determination of identification posed factual issues for the jury. The positive lineup identification, buttressed by the in-court identification, sufficiently support the finding by the trier of the facts that it was the defendant and that the jury's verdict that he was guilty was amply supported by the evidence.

In any event, where identification and credibility are at issue, the jury in the first instance is responsible for such determinations, not an appellate court. (*People v Siu Wah Tse,* 91 AD2d 350, 352, *lv denied* 59 NY2d 679.) Here, a review of the record establishes that the jury was made aware that the prime issue to be determined was whether defendant was the person who had robbed complainant and, while the trial court's charge was not a model of clarity, under the circumstances of this case, it does not rise to the level of reversible error. The court summarized the evidence in this short trial and, on the issue of identification, instructed the jurors to evaluate the testimony by using their own experience, intelligence and common sense. Nor did defendant raise any objection at trial dealing with the charge on the issue of identification sufficient to preserve the objection for review on appeal. (CPL 470.05 [2]; *People v Thomas,* 50 NY2d 467, 471.)

The dissent finds error in the trial court's instruction on reasonable doubt and the inclusion of the phrase, "if the evidence is equal on both sides, then obviously, the burden of convincing you beyond a reasonable doubt has not been met". However, in *People v Fox* (72 AD2d 146, 147), we recognized that such an instruction is "formally correct", although it was observed that it would be better to reduce the risk that a jury might draw the negative inference that if the scales were uneven, that would be sufficient to convict. Here, the trial court referred to "the evidence is evenly balanced" language in contrasting the heavy burden imposed upon the People in a criminal case (beyond a reasonable doubt) with the lighter burden in a civil case (fair preponderance of the evidence) and explained the nature and degree of "doubt" to be considered, based upon the evidence or lack of evidence, not speculation or prejudice. In doing so, the court defined "reasonable doubt" and instructed that, if the evidence were evenly balanced, the prosecution had not sustained its burden of proving each element of the crime beyond a reasonable doubt and, in such case, the jury would be obligated to return a verdict of not guilty. Unlike the situation in *People v Wade* (99 AD2d 474), the charge here did not create such a negative inference, so as to lead the jury to believe that something less than guilt beyond a reasonable doubt would be sufficient to sustain a conviction. Thus, under the circumstances in this case, the trial court's instructions did not unduly prejudice defendant so as to require a new trial. (*See, People v Thompson,* 97 AD2d 554.) Contrary to the observation by our dissenting colleague, defendant did not object to the charge as improperly shifting

the burden of proof. The only objection to that portion of the charge was that it was confusing. Nor was the general exception to the charge as a whole at all sufficient to preserve the issue for appellate review. (*See, People v West*, 56 NY2d 662.)

Nor do we agree with the dissent that there was any error in the trial court's marshaling of the evidence, which was unbiased and evenly balanced. In summarizing the evidence, the Trial Justice not only made reference to the proof which had been offered by the prosecution, but also pointed to the evidence on defendant's case, including the testimony of his mother that he did not own an orange jump suit. Considering the charge as a whole and the fact that, in this relatively short trial, it was carefully brought to the attention of the jury that the prime issue was whether it was defendant who had actually committed the crime, we do not perceive any basis on this record to interfere with the jury's determination of factual questions relating to the issues of identification and credibility, which were peculiarly within the province of the jury. Concur—Sullivan, J. P., Asch, Fein, and Kassal, JJ.; Rosenberger, J., dissents in a separate memorandum.

Rosenberger, J. (dissenting). Defendant Edmond Mosley is now serving a sentence of imprisonment imposed on a judgment entered in Supreme Court, Bronx County (DiFede, J.), on June 23, 1982, following his conviction upon a jury verdict for robbery in the first degree. He appeals on the grounds that his State and Federal constitutional rights to due process and a fair trial were violated. He contends, *inter alia*, that the jury instructions were inadequate and improper in that they (1) omitted an identification charge; (2) improperly defined reasonable doubt with reference to an "even balance" or "equal balance" of the evidence and (3) unfairly marshaled the evidence. I agree, for the reasons set forth below and would reverse the judgment, remanding the matter for a new trial.

Mosley was indicted and convicted of robbery in the first degree for robbing Mary McNeil of her purse containing $17, during the course of which he allegedly displayed a knife. In substance, the evidence adduced at trial showed that at about 5:30 P.M. on January 7, 1982, Mary McNeil entered the elevator of her daughter's apartment building, in The Bronx. A black male, about 25 years old, 6 feet tall, weighing about 200 pounds, wearing thick glasses, and an orange jump suit forced the doors to the elevator open as they were closing, and entered. The perpetrator pulled out a knife; held it to McNeil's throat; and said "Give me your money. I don't want to hurt you." Looking up at and facing him, McNeil handed the

perpetrator her pocketbook. He removed her wallet, stopped the elevator on the fourth floor, pushed her out and threw the pocketbook out after her. The robbery transpired in 5 or 10 seconds. McNeil waited a few minutes, then went to the seventh floor where her daughter lived. When the police arrived, in the presence of the building security guard, Orville Kerr, Mrs. McNeil gave the aforementioned description of the robber. McNeil, about three weeks later identified the defendant during a lineup as the man who robbed her. She later identified him at trial. Mr. Kerr testified at trial that he had seen defendant in the building before, and had seen him in the lobby wearing an orange jump suit, approximately one-half hour before McNeil reported her robbery to the security desk.

At trial, the defense contended that there had been a mistaken identification. Beatrice Mosley, the defendant's mother, testified that her son lived with her; that she did his laundry; that the defendant did not own an orange jump suit; that he had a space between his front teeth, a tooth missing from the side of his mouth; and always wore an earring in his pierced ear. Detective Richard Quelch testified concerning the description of the robber McNeil had given to the police. She had made no mention of defendant's hairstyle, facial characteristics, a pierced ear with an earring, or gap between the teeth. He testified that no knife had been recovered from defendant when he was arrested.

It is patent that the cumulative errors in the court's instructions to the jury; the absence of a specific identification instruction, the repeated uses of the phrases "an even balance of the evidence" and "if the evidence is equal" in the context of the reasonable doubt instruction, and the biased marshaling of the evidence, denied defendant his rights to due process and a fair trial.

The Court of Appeals stated in *People v Whalen* (59 NY2d 273 [1983]) that a detailed charge should be given to draw attention to the possible unreliability of identification testimony, out of a sense of fairness. Courts have consistently reiterated that a specific identification charge is required where the evidence presents a close and paramount question of identification. (*People v Morris,* 100 AD2d 600 [2d Dept 1984]; *People v Chestnut,* 99 AD2d 515 [2d Dept 1984]; *People v Knowell,* 94 AD2d 255 [2d Dept 1983]; *People v Daniels,* 88 AD2d 392, 400-402 [2d Dept 1982]; *People v Rodriquez,* 61 AD2d 914, 915 [1st Dept 1978].)

Identification was a substantial and critical issue in this

case where a single eyewitness and no other direct evidence linked the defendant to the crime. The complainant viewed the robber face-to-face for only a brief 5 to 10 seconds in a brightly lit elevator; yet the description she provided the police only generally fit the defendant. She noted height, weight, thick glasses and a distinct item of clothing—an orange jump suit—but her description lacked any mention of defendant's noticeable characteristics—hairstyle, facial features, ear with a pierced earring or space between his teeth. (*See, People v Diaz*, 53 AD2d 587 [1st Dept 1976].)

It was incumbent upon the court to instruct the jury adequately on identification, and to explain the application of the law to the facts. (*People v Rodriquez, supra.*). The court's charge in its entirety did not meet the technical requirements of an identification charge, since, although a general credibility charge was given, it failed to state that identification had to be proven beyond a reasonable doubt. (*People v Whalen, supra,* p 279.) Nor could the jury have inferred from the court's over-all reasonable doubt charge that identification had to be proven beyond a reasonable doubt. The court did not instruct the jurors that each and every element had to be proven beyond a reasonable doubt. (*Cf. People v Newman,* 46 NY2d 126, 128-129 [1978].)

The reasonable doubt instruction, rather than having a curative effect, compounded the error since it contained inaccurate language which could well have left the jury with the impression that it could vote to convict if the evidence of identification was a little more than just even. (*People v Fox,* 72 AD2d 146, 147-148 [1st Dept 1980].) The Trial Judge in the present case included the following in his charge to the jury on reasonable doubt:

"Number two, you heard the expression from time to time again, beyond a reasonable doubt. It is a big burden which the People have, because beyond a reasonable doubt is more than just an even balance of the evidence because if the evidence is evenly balanced then you have an obligation to report a verdict of not guilty, because if the evidence is evenly balanced, then the People have not sustained the burden beyond a reasonable doubt * * *

"You must be convinced on the basis of the evidence either that the burden has been met by the People or that it has not been met by the People. So let me go back again. If the evidence is equal on both sides, then, obviously, the burden of convincing you beyond a reasonable doubt has not been met, and if the evidence is equal, then you have an obligation to

report a verdict of not guilty. But if you are convinced that the People have met their burden beyond a reasonable doubt, then you may—you may come in with a verdict of guilty as charged."

The court's references to "an even balance of the evidence" twice at the beginning of the reasonable doubt portion of the charge, and its use of the phrase "if the evidence is equal" twice at its conclusion, constitutes, in my view, reversible error, since the remainder of the charge did not adequately explain the People's burden of proof in detail. *(People v Wade,* 99AD2d 474-475 [2d Dept 1984]; *compare, People v Thompson,* 97 AD2d 554 [3d Dept 1983].)

The People's contention that defendant failed to raise these specific grounds at trial, and hence waived any objections to the adequacy and propriety of the jury instructions, is unpersuasive. Defendant's objections to the disapproved burden-shifting language, and to the lack of clarity as to the burden of proof in the reasonable doubt charge sufficed to preserve these claims for review. Indeed, under the circumstances of this case, defendant's general exception to the entire charge effectively preserved even the claim, not raised at trial, that a detailed identification charge was required. *(See,* CPL 470.05 [2].) Here defense counsel discontinued a series of specific objections, and registered a general objection to the entire charge, upon the then interjected recommendation of the court. The People's argument that defense counsel was undeterred by the court's recommendation is belied by the record. Counsel stated "I am almost done", and merely finished her sentence before entering a general exception to the charge. Assuming, arguendo, defendant's claims of error were not preserved, this court takes cognizance of them as a matter of discretion and in the interest of justice. (CPL 470.15 [6] [a].)

Finally, the trial court's marshaling of the evidence was biased and thereby deprived defendant of a fundamentally fair trial. The court stated, in the context of the interested witness instruction that the complainant "says this man did it. Maybe she wants justice done, whatever that is. That's an interest. Does that affect her credibility and reliability?" Can it seriously be maintained that an interest in seeing justice done constitutes possible impeachment of a witness? I think not. This statement seems to favor the prosecution, and may have improperly communicated the court's belief in the complainant's testimony. As the Court of Appeals stated in *People v Bell* (38 NY2d 116, 120 [1975], citing *People v Mendes,* 3 NY2d 120, 121 [1957]) "care must be taken to guard against 'the possibility that the stated opinion of the trial court or even the suggestion of an opinion might be seized upon by the jury and eventually prove decisive' ".

The magnitude of these errors affected defendant's fundamental right to a fair trial, and mandate reversal. (*People v Crimmins,* 36 NY2d 230, 241-242 [1975]; *People v Rivera,* 75 AD2d 544, 546 [1st Dept 1980].) The evidence of guilt here was not overwhelming. A substantial, pivotal issue of identification was presented. That identification issue was sufficiently substantial that there was a significant possibility the jury would have acquitted defendant here, had it not been for the errors and bias in the court's charge.