Moskowitz, J. (dissenting).
I would reverse and remand for a new trial because the trial court’s response to the jury’s note asking whether a spur of the moment action could constitute intent was not balanced. Rather, the court’s response, followed by a hypothetical that mirrored the prosecution’s version of events, inadvertently answered the jury’s ultimate question. Therefore, I dissent.
Defendant and Mark J., both teenagers in September 2004, had known each other for about 10 years during what they agree was a rocky relationship. On the night of September 3, 2004, defendant approached Mark. Earlier in the evening, the two men had had a hostile encounter over defendant’s refusal *302 to provide Mark with the number of someone from whom Mark could purchase marijuana. Mark admittedly had made fun of defendant during that encounter.
According to Mark’s testimony, defendant rode up on his bicycle and immediately hit Mark in the face with a “metal object.” Mark stood up and tried to defend himself by grabbing defendant by the collar with both hands, but defendant hit him in the face again with the metal object. Mark tried to take the object away from defendant, but defendant hit him in the face a third time, causing him to stumble backwards. At this point, defendant raised his arm and Mark heard what sounded like a firecracker.
Defendant testified to a different version of how the shooting occurred. Defendant testified that in the evening he came across Mark and two of Mark’s friends sitting in a courtyard celebrating one of the friends’ birthday. Despite the earlier angry exchange with Mark, defendant went over to say “Happy Birthday” as he knew the person whose birthday it was. One of the friends invited defendant to have a drink with them at which point Mark became angry, yelling that he did not want to share his Hennessy with defendant.
Defendant testified that he then pulled out a pair of brass knuckles that he was carrying and hit Mark in the face with them. Mark, at six feet tall and 215 pounds, was much bigger than defendant. Mark grabbed defendant by the neck. Defendant punched Mark in the face a second time. Defendant then saw Mark reaching for something in his waistband and Mark pulled out a gun with his right hand. Defendant grabbed Mark’s right wrist. During the struggle, Mark’s gun discharged, shooting Mark. Thus, defendant’s version of events was critically different from Mark’s, because, according to defendant, Mark pulled out Mark’s own gun and it discharged while defendant was struggling with Mark, as opposed to defendant’s bringing his own gun to the scene.
After being shot, Mark ran away from defendant. Meanwhile, according to defendant, after the shot was fired, Mark dropped the gun and held his stomach. Another person who had been with Mark picked up the gun, and both Mark and defendant fled. Defendant hailed a cab, and, after stopping at a friend’s home at 118th Street and Lexington Avenue, took a Metro-North train back to Connecticut, where he had been living with his cousin. Defendant was eventually arrested in Connecticut.
Defendant was charged with attempted murder in the second degree, attempted assault in the first degree, criminal posses *303 sion of a weapon in the second degree and assault in the second degree.
In its original charge to the jury regarding attempted assault in the first degree, the court instructed that “intent means conscious objective or purpose.” After approximately two hours of deliberations, the jury sent the court the following note:
“We need further clarification on Count # 2 [attempted assault in the first degree], i.e. Does a spur of the moment action constitute intent? Please define intent. Did the accused have to come to the fight with the intent to shoot for there to be attempted assault in the 1st degree?”
The court read the note into the record and apprised the parties of the response it intended to give to the jury, namely, that it intended to: (1) define intent again; (2) answer “yes . . . , depending on the circumstances,” to the question whether a “spur of the moment action” could constitute intent; and (3) answer “no” to the question whether defendant had to “come to the fight with the intent to shoot” in order to be convicted of attempted assault in the first degree.
Defense counsel asked the court to “just define intent for them and not to answer either of [the jury’s] questions [except] to say it all depends on the circumstances and they are the finders of facts.” The court reiterated that it intended to define intent and to answer the jury’s questions.
Thereafter, the court addressed the jury. The court noted that it would provide the jurors with “the longer version of what constitutes intent,” which “may very well answer the[] questions” posed in the jury’s note. The court then defined intent as “a conscious objective to cause the act with which [the defendant] is charged.” The court noted that the People have the burden “to prove the intent of the defendant beyond a reasonable doubt,” and instructed, “If you find from the evidence that the defendant did not have a conscious objective to bring about the violation of law[,] you must find the defendant not guilty of this crime.” The court then expanded on the definition provided in its initial instruction, by adding that the formation of intent “can be instantaneous or drawn out.” The court concluded its definition by commenting that a determination of a defendant’s intent “depends upon the peculiar circumstances of the case, upon the man’s spoken words, his actions and sometimes upon a combination of both.”
The court could have stopped there in answering the jury’s question as to whether a “spur of the moment action” could *304 constitute intent. However, the court continued by stating: “Now, going directly into your question does a spur of the moment action constitute intent, in this context I would say yes. Depending on the peculiar circumstances of the situation. In this instance my answer is yes.” (Emphasis supplied.)
Then, the court related a hypothetical to the jury.
“Perhaps I can throw in an analog [sic], example removed from this particular pattern. Suppose two guys bump one another on the street, one guy says [‘]screw you[’] to the other guy and this guy pulls out a pistol and shoots him. That intent in that instance was formulated almost instantaneously, spur of the moment. Again, that’s an example. Here the answer is yes to that question. Could be drawn out, could be instantaneous. ‘Did the accused have to come to the fight with the intent to shoot for there to be attempted assault in the first degree?’ The answer to this is no. The defendant could have arrived at the scene to either confront or talk and then formulated the intent to shoot. So, the answer to the question one is yes and the answer to question two is no. You may resume deliberations.”
After the jury left the courtroom to resume deliberations, defense counsel objected to the court’s response to the jury note:
“I have an exception to the example you gave. I have no quarrel with you reading and defining intent, but answering the question and giving the example I think was just too close to the factual pattern here and that really prejudiced the defendant and I have to object to it.”
The court noted defendant’s exception. Five minutes later, the jury returned its verdict of guilty of attempted assault in the first degree, criminal possession of a weapon in the second degree and assault in the second degree.
In responding to jury requests, the trial court “is vested with some measure of discretion in framing its response and is in the best position to evaluate the jury’s request in the first instance” (People v Malloy, 55 NY2d 296, 302 [1982], cert denied 459 US 847 [1982]). However, the court must issue instructions that are balanced (see People v Aleman, 12 NY3d 806 [2009]); People v Bell, 38 NY2d 116, 120 [1975] and “avoid even the appearance of bias” (People v Watkins, 157 AD2d 301, 307 [1990]). Accord *305 ingly, it is reversible error for the court to emphasize factors favorable to one side’s theory of the case (see generally People v Brown, 129 AD2d 450, 451-453 [1987]; People v Melville, 90 AD2d 488, 488-489 [1982]).
While the court may provide hypothetical examples in its jury instructions “as an aid to understanding the applicable law” (People v Wise, 204 AD2d 133, 135 [1994], lv denied 83 NY2d 973 [1994]), the hypothetical should not be so “strikingly similar” to the facts before the jury as to convey the court’s view of the evidence (People v Hommel, 41 NY2d 427, 430 [1977]). “[T]he crucial question is whether the charge, in its entirety, conveys an appropriate legal standard and does not engender any possible confusion” (Wise, 204 AD2d at 135). Thus, in People v Brown, this Court reversed a conviction because, to illustrate a situation where intent could be inferred, the trial court used a hypothetical of a person killed by a gunshot wound to the head, “surely an inappropriate illustration in a case in which the deceased died from a stab wound to the chest” (129 AD2d 454).
In the case before us, viewing the trial court’s answer to the jury’s question in its entirety, we find that the court violated these mandates to respond to jury inquiries in a balanced fashion that “does not engender any possible confusion.” The court’s response to the jury’s note was improper because the court’s answer inadvertently directed the jury to find that the prosecution had proven intent to shoot and because the facts of the hypothetical adopted the People’s version of events.
The jury had asked whether intent can occur on the spur of the moment. In response, the court stated, “[I]n this context I would say yes. Depending on the peculiar circumstances of the situation. In this instance my answer is yes.” The court then gave the jury a hypothetical example of criminal intent that mirrored Mark’s (and therefore the prosecution’s) version of how the crime occurred and instructed the jury that the shooter in the hypothetical exhibited criminal intent. Despite defense counsel’s objection, the court did not give any curative instruction.
The court’s answer to the jury’s question about spur of the moment intent prejudiced defendant. In answering the jury’s question, the court inadvertently answered the ultimate question in the case, because any reasonable juror could easily have concluded that the words “in this context” referred to the case at hand and that “yes” meant that defendant had acted with intent (see People v Watkins, 157 AD2d at 307 [“a court may not suggest its own opinion as to guilt”]).
*306 The court compounded the prejudice by giving the jury a hypothetical involving “two guys” who “bump one another on the street” one says “[‘jscrew you[’] to the other guy and this guy pulls out a pistol and shoots him.” This hypothetical was prejudicial because it closely resembled the prosecution’s version of events: that defendant rode his bicycle into a courtyard where Mark was sitting, hit Mark and shot him. By giving this hypothetical and telling the jury that the criminal in the example acted with criminal intent, the court essentially instructed the jury that defendant intended to shoot Mark.
The court’s instruction was particularly prejudicial given that it was hotly contested whether defendant brought his own gun to the scene or it was Mark’s gun that discharged during the struggle with defendant. Which version of events to believe was critical to the determination of whether or not defendant had the requisite intent. The court’s instruction took this determination away from the jury (see e.g. People v Hill, 52 AD3d 380, 382 [2008] [with respect to gang assault, analogy to orchestra could have led the jury to believe that any person involved in fight was guilty whether or not engaged in conduct intended to aid primary actor]).
That the court may have preceded this erroneous instruction with the standard instruction does not ameliorate this prejudice. It is irrelevant that the question that prompted the prejudicial instruction may have exhibited the jury’s understanding that it was supposed to determine whether defendant had formed the requisite intent. The court’s instruction essentially directed this jury, that was already struggling with the issue of criminal intent, to find in favor of the prosecution. The court failed to give any curative instruction after defense counsel objected. Thus, in light of the entire charge, I cannot agree with the majority that the court was merely providing further instruction on the issue of intent.
The cases the majority cites are vastly different from this case because in each one the charge as a whole conveyed the correct standard to the jury (see e.g. People v Umali, 10 NY3d 417 [2008] [erroneous instruction on justification defense that improperly shifted to defense the prosecution’s burden to prove justification beyond a reasonable doubt was harmless where other instructions repeatedly informed the jury that it was the prosecution’s burden and court advised jury that defendant never had the burden to prove anything]; People v Drake, 7 NY3d 28 [2006] [charge as a whole did not communicate that *307 jurors should disregard expert testimony, but rather that expert testimony was admitted to provide guidance as to evaluating eyewitness testimony]; People v Fields, 87 NY2d 821 [1995] [reasonable doubt charge as a whole conveyed correct standard]).
It is a cornerstone of our legal system that the roles of the court and the jury are separate and distinct, particularly regarding the issue of intent:
“[T]he question of intent can never be ruled as a question of law, but must always be submitted to the jury. Jurors may be perverse; the ends of justice may be defeated by unrighteous verdicts, but so long as the functions of the judge and jury are distinct, the one responding to the law, the other to the facts, neither can invade the province of the other without destroying the significance of trial by court and jury.” (People v Flack, 125 NY 324, 334 [1891]; see also People v Moran, 246 NY 100, 103 [Cardozo, Ch. J., 1927] [“Whenever intent becomes material, its quality or persistence—the deranging influence of fear or sudden impulse or feebleness of mind or will—is matter for the jury if such emotions or disabilities can conceivably have affected the thought or purpose of the actor”].)
Here, the court did not merely give the jury an erroneous context in which to evaluate the evidence. Rather, the court actually answered the jury’s question, and in a way that the jury could easily have interpreted to mean that defendant had the requisite intent. The court immediately followed that answer with a hypothetical that mirrored the prosecution’s version of events. The cumulative effect of this charge was to usurp the jury’s function to come to its own conclusion about defendant’s intent.
I am not unmindful of the difficulties trial judges face in responding meaningfully to questions from the jury. I recognize, as does the majority, that the standard charge may be insufficient to provide the jury with the information it needs to return a verdict. However, the paramount responsibility of a judge is to ensure a fair trial. Thus, while the majority would allow for “inartful phrasings” or “a degree of imperfection” in a judge’s framing of “off-the-cuff answers,” a question from the jury does not mean a judge may suggest his or her own opinion about the guilt of the defendant or offer a hypothetical that favors one side.
*308 Contrary to the majority’s position, this error was not harmless. Intent to cause serious physical injury by means of a deadly weapon is a critical element of attempted assault in the first degree (Penal Law § 120.10 [1]). The court’s instruction took the determination of whether that element was proved away from the jury.
Cattebson and McGuibe, JJ., concur with Saxe, J.P.; Moskowitz and Acosta, JJ., dissent in a separate opinion by Moskowitz, J.
Judgment, Supreme Court, New York County, rendered February 27, 2007, affirmed.