■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STEVE RIVERA, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK RIVERA, Appellant.—Judgment of the Supreme Court, New York County, rendered January 18, 1979, convicting each of the defendants of murder in the second degree and imposing sentence, unanimously reversed,

on the law and the facts, and the matter remanded for a new trial. Each of the defendants was convicted, after trial, of a brutal and singularly senseless murder. The evidence establishing guilt was conclusive. Indeed, it may fairly be said that no impartial jury could have reached a verdict other than that here reached. Nevertheless, and because of the misconduct of the prosecutor, we are constrained to reverse. The evidence disclosed that Michael Stokes, a stockboy in a Key supermarket, learned of a job opening at his place. He went to the home of his friend Richard Soto to tell him about it. As they left the building they met Steve Rivera, one of the defendants, the superintendent of the building, his brother Frank, the other defendant, and Jose Santiago known as "Jughead" sitting on the stoop. Steve invited the others to his apartment to listen to music and drink beer. At the apartment the defendants engaged in horseplay, with Jughead as the butt. Ultimately Steve pushed Jughead onto a chair which broke. Steve demanded $15 from Jughead as payment for the broken chair. As Jughead moved toward the door, Frank grabbed him around the neck, pulling him to the floor. As Jughead squirmed, Steve pulled out a knife and stabbed him six times. Frank then got off the floor and said to Steve "Make sure he's dead". As Jughead endeavored to drag himself into the living room, Steve stabbed him an additional number of times. The defense was that of justification. Steve testified that Jughead and Stokes had an argument. Steve asserted that he told them to lower their voices whereupon Jughead threw a table at him causing him to fall off his chair. Jughead grabbed the chair and swung it at Steve, breaking it against the wall. Jughead then came at Steve with a broken beer bottle whereupon Steve took out his knife and Jughead "got stuck" with it. The defense was wholly demolished by the testimony of the medical examiner who indicated that, in addition to other injuries, Jughead had suffered 14 stab wounds. Despite repeated objections by defense counsel—objections which were sustained by the trial court—the prosecutor, in her endeavor to discredit the testimony of the defendants, persisted in seeking to compel them to characterize the testimony of prosecution witnesses as lies. She emphasized this impropriety by adverting to it in her summation. Improper though this may have been, we would not reverse were this the sole misconduct here involved, for standing alone, it cannot be said to have deprived defendants of a fair trial in light of the evidence of their guilt. However, the prosecutor went much further. Her summation was a blatant appeal to prejudice. At one point she referred to people "like the defendants who, because of their unique psychological composition, commit cruel, sadistic crimes for nothing more than the feelings [sic] of power and control they derive from tormenting another human being". Objection by defense counsel led to a Bench conference, followed by an instruction to the jury that summation is not evidence and that the jury's verdict must be based solely upon the evidence presented. The prosecutor continued: "Ladies and gentlemen, Frank and Steve Rivera are the wolves of this society and Jose Santiago is the sheep". Objection and Bench conference followed during which motions for a mistrial were made. Although the motions were denied, the trial court cautioned the prosecutor against the use of such "graphic language". Despite the admonition the prosecutor persisted. She continued her summation with the comment: "Ladies and gentlemen Frank and Steve Rivera were the neighborhood bullies, fooling around with the neighborhood idiot, with Jughead, with Jose Santiago". Again defense counsel objected and again the trial court instructed the jury that comments by the prosecutor were not evidence. *People v Crimmins* (36 NY2d 230) teaches us that although error of

constitutional dimension may be subject, under certain circumstances, to the "harmless error" doctrine, there are certain rights so fundamental that their violation must result in a forfeiture of any conviction thereby obtained. "Not only the individual defendant but the public at large is entitled to assurance that there shall be full observance and enforcement of the cardinal right of a defendant to a fair trial. The appellate courts have an overriding responsibility, never to be eschewed or lightly to be laid aside, to give that assurance. So, if in any instance, an appellate court concludes that there has been such error of a trial court, such misconduct of a prosecutor, such inadequacy of defense counsel, or such other wrong as to have operated to deny any individual defendant his fundamental right to a fair trial, the reviewing court must reverse the conviction and grant a new trial, quite without regard to any evaluation as to whether the errors contributed to the defendant's conviction. The right to a fair trial is self-standing and proof of guilt, however overwhelming, can never be permitted to negate this right" *(People v Crimmins, supra,* p 238). The line between proper conduct on the part of a prosecutor and prosecutorial misconduct may sometimes be a thin one. This is particularly true where summation is sought to be used as a display of oratorical virtuosity. In such circumstances the prosecutor must speak with special care to insure that the right of a defendant to a fair trial is not destroyed. Such was not here the case. Here, the purple passages were used as a tool to inflame the passions of the jurors to the end that a conviction would be assured. Thus, despite the overwhelming nature of the evidence against them, defendants were deprived of a fair trial. Accordingly, a retrial is mandated. Concur—Murphy, P. J., Fein, Sullivan, Ross and Bloom, JJ.