■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PEDRO ARROYO, Appellant. — Judgment, Supreme Court, Bronx County, rendered March 15, 1979, convicting defendant, on jury verdict, of assault in the second degree (Penal Law, § 120.05, subd 2), and sentencing him as a second violent felony offender to a term of imprisonment of 3½ to 7 years, is affirmed. The Trial Judge was justified in finding that the victim could not "with due diligence" be found (CPL 670.10, subd 1), and thus permitting the use of the transcript of the victim's testimony from the preliminary hearing. The opportunity for cross-examination and the actual cross-examination at the preliminary hearing were adequate, as was the identification of the defendant. The most serious questions in the case arise by reason of the Assistant District Attorney's improper and intemperate remarks on summation. Some of these remarks were innocuous or obvious, e.g., the possibility that the victim might have been killed. Again the remark about the police officer, though obviously improper, added almost nothing; the testimony of the victim — the obvious informant — including cross-examination at the preliminary hearing shortly thereafter was read to the jury. Some of the District Attorney's remarks were in response to defendant's attorney's summation. Other remarks of the District Attorney were more serious and quite unjustified. The most serious was the suggestion that the absence of the victim at the trial may have been due to threat by the defendant. (In fact it seems quite clear that the absence was due to the victim's feeling of friendship for defendant.) We would agree with the dissenting Justice that these remarks would require a reversal but for the following circumstances: (a) The Trial Judge promptly gave pointed and effective curative instructions, repeated them in his charge, and then repeated them again in an addition to the charge. (b) There was no motion for a mistrial. (c) The defendant's guilt was absolutely clear and almost uncontested, the defense consisting essentially of just emphasizing the victim's absence from the trial. Concur — Ross, J. P., Lupiano, Silverman and Yesawich, JJ.

---

4   (See, Fish, Evidence [2d ed], § 449.)

Carro, J., dissents in a memorandum as follows: I dissent on the ground that the improper and prejudicial comments of the prosecutor in summation deprived the defendant of a fair trial. The attitude of the Assistant District Attorney throughout, and his gratuitous remarks, created an atmosphere inimical to the conduct of a reasoned inquiry. This dissent however is based primarily upon the following four excerpts from his summation. 1. "What do we have here? We have an assault case which, thank God, did not degenerate into something more vicious because of the actions of one unknown party who did not choose to come. He did not want to be involved, and as residents of the Bronx County, you know that this happens quite often. I don't want to get involved. They'll help you, but that's it." The purpose of the first part of this quote, and of several other similar comments, appears to have been to upset the jury and appeal to its sympathy, since it was only providence that this case was not more "vicious" or "serious" (i.e., murder?). The second portion of the quote referred to a man who allegedly interfered with the defendant's assault upon the complainant. In fact, the prosecutor did not know the identity of this witness. However, the effect of the comment is to imply that the prosecutor spoke to the witness who, had he chosen to come to court, would have supported the People's case. 2. "He [Officer Schmucker] was called over to see a woman all cut up, bleeding, distraught, hysterical. Investigated the case. He found out who did it. He couldn't tell you." This comment arose from a ruling whereby the officer was prevented from stating the identity of the perpetrator, as allegedly told to him by the complainant. The prosecutor is now telling the jury that, although the police officer investigated the case, and that investigation led to the discovery of the perpetrator (the defendant), the officer was not being permitted to tell them about that additional incriminating evidence. 3. "You are not to judge the morals of this woman. You told me you would not hold it against her because if you do, consciously or unconsciously, what you are doing is you are saying to him, Pedro I don't care what you do with your girlfriends. You can shack up with them, as many as you please. Cut them up." This blatant appeal was meant to inflame the jury and obscure the issues. This vivid "cut them up" was used for shock value only, to frighten the jury into making sure the defendant didn't "cut up" any more girls. Although continually admonished by the court, the prosecutor nevertheless persisted. In his concluding remarks he stated, 4. "Again, I remind you, you cannot hold it against the People, because if you do that, you are telling him to go outside and cut up anybody you want and threaten the hell out of them." This refers to the nonappearance at trial of the complainant and the People's use of the transcript of the preliminary hearing, in place of her live testimony. The record contains nothing concerning any threats by the defendant. In fact, as the Assistant District Attorney well should have known, the refusal to appear seemed voluntarily, and the complainant attempted on several occasions to have the charges dropped. However, using the same intemperate approach to passion rather than reason and to implication rather than fact, the prosecutor again attempted to inflame the jury by having the defendant go "outside" (which he will be free to do only if acquitted) and "cut up anybody you want and threaten the hell out of them." The trial court several times vigorously attempted to repair the damage by admonishing the prosecutor (to little avail) and by instructing the jury to ignore his outbursts. However, "The jury might be told by the court to forget them, but could they forget them? They might be told to disregard them, but how can we be certain that they did disregard them?" *(People v Fielding,* 158 NY 542, 551). "Not only the individual defendant but the public at large is entitled to assurance that there shall be full observance and enforcement of the cardinal right of a defendant to a fair trial.

The appellate courts have an overriding responsibility, never to be eschewed or lightly to be laid aside, to give that assurance." *(People v Crimmins,* 36 NY2d 230, 238.) "The prosecutor must speak with special care to insure that the right of a defendant to a fair trial is not destroyed. Such was not here the case. Here, the purple passages were used as a tool to inflame the passions of the jurors to the end that a conviction would be assured. Thus, despite the overwhelming nature of the evidence against them, defendants were deprived of a fair trial. Accordingly, a retrial is mandated." *(People v Rivera,* 75 AD2d 544, 546.) I would reverse and remand.