■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD BOWIE, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ERNEST THOMPSON, Appellant. [607 NYS2d 248] —Judgments, Supreme Court, Bronx County (Frank Diaz, J.), rendered April 19 and 16, 1991, convicting defendants, after joint jury trial, of manslaughter in the first degree and assault in the first degree and sentencing each as a predicate felon to concurrent prison terms of 12½ to 25 years on the manslaughter and 7½ to 15 years on the assault, unanimously reversed, on the law, and the matter remanded for a new trial.

Defendants were charged in the savage beating of Glen

"Bear" Albea, a member of the drug ring headed by defendant Bowie in the Bronx. Suspecting Albea of stealing drugs from a safe Bowie maintained in Albea's home, Bowie and defendant Thompson, in the presence of several other ring members, beat Albea with a baseball bat and a broomstick for 20 to 30 minutes, breaking several of his bones and splattering his blood about the scene. He later died at the hospital of complications stemming from this beating.

Subsequent negligent treatment at the hospital may have contributed to Albea's death. Unpredictably, Albea developed malignant hyperthermia, a "possibly hereditary" reaction to the anesthesia administered during his emergency surgery. When Albea's blood pressure dropped precipitously in the recovery room, surgeons rushed to open his chest and perform cardiac massage. In doing so, they inadvertently punctured his lung, requiring three sutures to close the wound. Albea never recovered consciousness. The cause of death, four days later, was septicemia, a bacterial infection resulting from "bl[unt] force injuries of the h[e]ad and extremities with surgical intervention."

The fact that Albea's death did not follow immediately upon the assault does not necessarily break the causal chain between the two events. It has long been held that criminal liability for death resulting from a felonious assault is not relieved by such contributing factors as a victim's pre-existing health condition *(Matter of Anthony M.,* 63 NY2d 270, 280), or medical intervention in the form of improper treatment *(People v Kane,* 213 NY 260), unless death can be attributed *solely* to the negligent medical treatment *(People v Griffin,* 80 NY2d 723, *cert denied* — US —, 114 S Ct 78). Such intervening negligence must be established as the sole cause of death, but it need not be shown to have been "gross negligence" *(supra,* at 727). The trial court's emphasis on meeting a gross negligence standard in order to break defendants' chain of causation improperly altered the burden of proof, and this error although objected to, was not rectified in a curative instruction. Defendants are thus entitled to a new trial on the manslaughter charge.

A second assigned error necessitates reversal of the balance of the judgment as well. The prosecutor's overzealousness was so persistently egregious, even in the face of numerous sustained objections and cautions, as to have denied a fair trial to these defendants.

The prosecutor started off seeking to evoke sympathy for

the victim, who was, after all, a member of the same drug ring, calling him a "Teddy Bear". She then called upon the jury to avenge Albea's death by taking back the streets from those hoodlums who ruled the neighborhood at the point of a gun, with the power over who lives and who dies. Such appeals to emotion tend to deflect the jurors' attention from issues of fact on the question of guilt or innocence, and cause them instead to focus on achieving vengeance and protection for their community *(People v Miller,* 149 AD2d 439, 440). This "safe streets" argument has long been condemned by our courts *(see, People v DeJesus,* 137 AD2d 761, 762) as a deprivation of fair trial, even where the evidence strongly favors the prosecution *(People v Gioia,* 286 App Div 528, 530). Furthermore, a prosecutor who resorts to name-calling instead of confining her remarks to the facts commits a blatant act of prejudice which can only result in denying a defendant a fair trial *(People v Rivera,* 75 AD2d 544, 545-546), regardless of the merits of the case.

The prosecutor was also guilty of shifting the burden of proof, suggesting, for example, that it was incumbent upon defendants to fill in certain gaps on missing physical evidence. She referred to evidence not in the record by repeatedly seeking to raise Bowie's propensity for violence in the commission of other similar acts. And she offered her own opinion on certain questions of fact, thus cloaking such speculative assertions with the integrity of her office. The persistence of this prejudicial conduct, even in the face of sustained objections, denied defendants a fair trial despite evidence of guilt that was sufficient to sustain the verdict, and dictates reversal for a new trial *(People v Sandy,* 115 AD2d 27). Concur—Sullivan, J. P., Carro, Rosenberger and Wallach, JJ.