■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KHAREY WISE, Appellant. [612 NYS2d 117] —Judgment, Supreme Court, New York County (Thomas B. Galligan, J.), rendered January 9, 1991, convicting defendant, after a jury trial, of assault in the first degree, sexual abuse in the first degree, and riot in the first degree and sentencing him to concurrent terms of 5 to 15 years, 2⅓ to 7 years and 1 to 3 years, respectively, unanimously affirmed.

Defendant does not dispute that the crimes for which he was indicted actually took place. He urges instead that his various statements and admissions should have been suppressed and that, without these statements and admissions, there was inadequate evidence that he was involved. However, the fact findings made by the trial court were amply supported by the evidence, and there is no basis for not giving them due deference on appeal *(People v Prochilo,* 41 NY2d 759, 761).

In any event, the record simply does not substantiate defendant's contention that when the police first approached him, they did not know that he was involved in the case. By the time that the detectives went in search of defendant, a full day had elapsed since the mayhem in Central Park, and the police had already interviewed both the victims and many of the suspects. In that regard, the police had taken statements from numerous alleged perpetrators providing them with information concerning most of the details of the crimes committed in the park and the identity of most of the participants. At least two of the suspects had directly implicated defendant. Yet, notwithstanding that there was probable cause to believe that defendant had taken part in the riotous conduct sufficient to furnish a basis for custodial interrogation *(see, People v Johnson,* 66 NY2d 398, 402-403), the fact is that defendant voluntarily agreed to accompany the detectives to the station house for questioning. Indeed, the Court of Appeals has affirmed this Court's previous determination that Yusef Salaam, who was together with defendant at the time in question, voluntarily agreed to come to the precinct for ques-

tioning *(People v Salaam,* 83 NY2d 51, *affg* 187 AD2d 363), and there is no significant distinction between defendant's situation and that of Salaam.

Defendant maintains that an innocent person like himself, a learning disabled 16 year old with low intelligence and no prior experience with the criminal justice system, was particularly vulnerable to the coercive pressures of police requests, and thus would have reasonably considered himself to be in custody and not in a position to refuse to be interviewed. There is no indication that defendant is retarded or otherwise incompetent. While some proof was introduced at trial that defendant may be learning disabled, evidence subsequently elicited may not be used to invalidate the findings of a suppression court *(see, People v Giles,* 73 NY2d 666). To the extent that defendant may be so incapacitated, this matter was not educed until after the court had rendered its ruling on defendant's motion to suppress, and, at any rate, there is no authority for the proposition that a learning disability precludes an individual from giving voluntary consent to be questioned. A minor is certainly capable of waiving his or her *Miranda* rights *(Fare v Michael C.,* 442 US 707; *People v Stephen J. B.,* 23 NY2d 611; Family Ct Act § 305.2 [4] [b]; [7], [8]) and answering questions, and there are no grounds to hold otherwise insofar as defendant is concerned.

Consequently, defendant's various statements and admissions were either spontaneous or provided after the administration of the *Miranda* warnings, and suppression was properly denied. There was, accordingly, sufficient evidence to support the jury's finding of guilt.

Finally, defendant argues that reversal is mandated because the court, during its initial and supplemental charge on accomplice liability, supplied the jury with some examples to illustrate the concept, thereby giving the erroneous impression that defendant could be convicted because of his mere presence at the scene of the crime. Specifically, defendant complains that the court used a theater analogy to explain accomplice liability such that the jury was instructed that an actor is a player regardless of the importance of his role. While defendant does not assert that the court did not properly define the principle of accomplice liability, he, in effect, contends that the otherwise correct definition was rendered erroneous and prejudicial by the addition of certain hypotheticals, only one of which (the theater analogy) resulted in an objection.

However, a Trial Judge is not precluded from supplying

hypothetical examples in its jury instructions as an aid to understanding the applicable law *(People v Fagan,* 166 AD2d 290, *lv denied* 77 NY2d 838) so long as the hypothetical is fair and will not mislead the jury *(People v Johnson,* 171 AD2d 532, *lv denied* 77 NY2d 996). Although a fair hypothetical must not be biased or uneven *(People v Bell,* 38 NY2d 116) or indicate to the jury that the court has an opinion of the defendant's guilt or innocence *(People v Hommel,* 41 NY2d 427), the crucial question is whether the charge, in its entirety, conveys an appropriate legal standard and does not engender any possible confusion *(People v Evans,* 192 AD2d 337, *lv denied* 81 NY2d 1072). Applying that standard, it is clear that the court's instructions, taken as a whole, expressed the proper definition of acting in concert and the hypotheticals used by the court, which were not " ' "strikingly similar" ' " to the facts in the matter herein *(People v Woods,* 199 AD2d 176, 177), were certainly fair and do not require reversal of defendant's conviction. Concur—Carro, J. P., Asch, Nardelli and Williams, JJ.