(January 25, 2007)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LUIS SORIANO, Appellant. [828 NYS2d 369]—

Judgment, Supreme Court, Bronx County (Margaret Clancy, J.), rendered June 3, 2002, convicting defendant, after a jury trial, of manslaughter in the first degree, and sentencing him, as a second violent felony offender, to a term of 17 years, unanimously reversed, as a matter of discretion in the interest of justice, and the matter remanded for a new trial.

Defendant raised a defense of justification at his jury trial for murder and manslaughter. In order to defeat the justification defense, the prosecution was required to prove that defendant subjectively knew that he could have retreated with complete personal safety to himself and the person he allegedly was trying to protect. We find that the trial court's charge misstated the law in such a way that the jury may have been misled to believe that the defense was defeated if the prosecution proved only that it was possible for defendant to avoid using deadly physical force by retreating, regardless of whether defendant was subjectively aware of the possibility of a safe retreat. In view of this error, we reverse the conviction and remand for a new trial.

Defendant was charged with second-degree murder and first-degree manslaughter in connection with the stabbing death of Daniel Mejil on December 15, 2000. The heart of the People's case at trial was the testimony of a single witness, Waleska Hernandez, who claimed to have seen defendant stab Mejil, without provocation, at a gathering of several people on Hoe Avenue in the Bronx. One of the people at the gathering was defendant's brother, Kenny Santos, whom Mejil accused of

cheating him on a drug deal the day before. According to Hernandez, Mejil was holding a baseball bat, pointed downward, when defendant stabbed him. Hernandez testified that Mejil, although enraged over the fraud he believed Santos had perpetrated, never swung the bat before he was stabbed.

Defendant presented a justification defense based on the testimony of three individuals who claimed to have seen defendant stab Mejil in the course of defending himself and Santos, his brother, from Mejil's assault with the baseball bat. These defense witnesses testified that, when Mejil began beating Santos with the bat, defendant, who had not previously been at the gathering on Hoe Avenue, rushed to the scene and tried to wrestle the bat away from Mejil. Mejil then began to hit defendant with the bat. At that point, according to the defense witnesses, defendant inflicted the fatal wound in self-defense. After being instructed on justification, the jury acquitted defendant of the murder charge but convicted him of manslaughter.

Penal Law § 35.15 (2) (a) provides that a person may use deadly physical force against another person if "[t]he actor reasonably believes that such other person is using or about to use deadly physical force" against the actor or a third person. In the next sentence of the statute, the following limitation on the right to use deadly physical force is set forth: "Even in such case, however, the actor may not use deadly physical force if he or she *knows* that with complete personal safety, to oneself and others he or she may avoid the necessity of so doing by retreating" (emphasis added).* The standard jury instruction dealing with the duty to retreat before using deadly physical force reads as follows: "The defendant would not be justified if he/she *knew* that he/she could with complete safety to himself/herself and others avoid the necessity of using deadly physical force by retreating" (CJI2d[NY] Justification: Use of Deadly Physical Force in Defense of a Person [emphasis added]). Thus, to defeat a justification defense in a prosecution for the use of deadly physical force, the People must prove beyond a reasonable doubt, not only that it was objectively possible for the defendant to retreat "with complete personal safety," but also that the defendant was subjectively aware that it was possible to do so.

In this case, the trial court first told the jury that the "defense of justification does not apply . . . if a defendant uses deadly physical force, knowing that with complete safety to himself and others, he can avoid the necessity of using such force by

---

* Since the subject incident occurred on the street, the exception to the duty to retreat for a person defending him or herself or others in his or her own dwelling (Penal Law § 35.15 [2] [a] [i]) clearly did not apply.

retreating." That part of the charge was correct. The court did not let the matter rest there, however, but went on to restate the standard as follows: "Once again, the People have the burden of establishing, beyond a reasonable doubt, that under the circumstances, [defendant] *could have retreated* with complete safety to himself and to Kenny Santos" (emphasis added). The latter sentence, by formulating the question as one simply of whether defendant "could have retreated," misstated the law by eliminating the subjective component of the test, and omitting from the prosecution's case knowledge as an essential element of proof (*see People v Lopez*, 200 AD2d 767, 768 [1994] [court erred in charging that "if there is another way of getting him out of it he's got to take it," and that "before you could use deadly physical force your back has to be against the proverbial wall"]; *People v La Susa*, 87 AD2d 578, 579 [1982] [court erred in instructing jury to determine whether the defendant "was . . . in a position where he could have retreated with complete safety"]). Although part of the charge on the duty to retreat was correctly formulated, the very next sentence was incorrectly formulated. To put it simply, the charge therefore became hopelessly confusing on a central point of the trial—whether defendant knew he could safely retreat. We therefore cannot accept the People's contention that the charge as a whole adequately conveyed the correct legal standard (*cf. People v Adams*, 69 NY2d 805, 806 [1987]).

Notwithstanding defendant's failure to object to the erroneous charge at trial, we reverse the judgment in the interest of justice (CPL 470.15 [3] [c]; [6] [a]). We note that the error in the charge cannot be considered harmless, given that, in view of the sharply conflicting testimony received at trial, the point at issue goes to the heart of the proffered defense (*see People v Crimmins*, 36 NY2d 230, 241-242 [1975]).

For the guidance of the court and counsel at the new trial to be held on remand, we address defendant's contention that the court erroneously permitted the People to offer certain testimony, over objection, as part of their rebuttal case. The rebuttal testimony at issue was to the effect that, the day after the incident, defendant gave a statement to the police in which he claimed that he had been at his girlfriend's apartment at the time Mejil was stabbed. The court properly admitted this evidence in rebuttal. That the People knew at the outset of trial that defendant would offer a justification defense did not require them to discredit that anticipated defense before it was presented. Moreover, defendant's statement to the police (a subsequently abandoned alibi) plainly was not direct evidence of

anything the prosecution was required to affirmatively prove on their case-in-chief. To reiterate, defendant's statement had nothing to do with the People's direct case. Rather, the statement was relevant as "evidence in denial of an assertion of a new affirmative fact or other new matter [namely, the justification defense] which the [defense] ha[d] endeavored to prove in reply to the case-in-chief," and as evidence impeaching defendant's witnesses (*People v Harris*, 98 NY2d 452, 489 [2002]). As such, the evidence of defendant's statement "was properly received in rebuttal even if it could have been offered on direct" (*People v Harris*, 57 NY2d 335, 345 [1982], *cert denied* 460 US 1047 [1983]). The statement was proper rebuttal, notwithstanding that it was not made by any witness called by defendant, since it was offered to discredit the justification defense by suggesting that the testimony on which that defense rested was fabricated after defendant abandoned his original plan to deny involvement in Mejil's death. "[A] party has the right to impeach or discredit the testimony of an opponent, and such evidence is always competent" (*id.*, quoting *Ankersmit v Tuch*, 114 NY 51, 55 [1889]). Concur—Tom, J.P., Mazzarelli, Friedman, Marlow and Malone, JJ.