■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KELLY MCTIERNAN, Appellant. [990 NYS2d 200]—

Judgment, Supreme Court, New York County (Carol Berkman, J., at ex parte unsealing order; Rena K. Uviller, J., at suppression hearing and trial), rendered January 26, 2010, convicting defendant, after a jury trial, of murder in the second degree, and sentencing him to a term of imprisonment of 20 years to life, unanimously reversed, as a matter of discretion in the interest of justice, and the matter remanded for a new trial, and, if the People intend to introduce defendant's statements on their case-in-chief, a new suppression hearing.

In the early morning hours of October 12, 2007, Fain Upshur

was found stabbed to death in the West Village neighborhood of Manhattan. Defendant was arrested several days later and charged with his murder. The trial presented two sharply different accounts of the incident. The People's main witness, Abdul Flynn, testified that on the evening of October 11, 2007, he met defendant on the street and the two decided to panhandle together. Flynn asked to use defendant's cell phone, and after making a call, put the phone in his own pocket. Upshur, whom Flynn claimed not to know, subsequently arrived and the three men started walking toward Washington Square Park.

During the walk, Flynn decided to keep defendant's phone. In furtherance of his plan, Flynn told Upshur to walk defendant down the block and then meet up with Flynn later at a nearby bar. Defendant noticed what was going on and confronted Flynn demanding his phone back. Upshur told defendant to "come here for a minute." The two men moved several feet away from Flynn, and Upshur whispered something to defendant. Flynn testified that several seconds later, defendant "just stabbed [Upshur]." According to Flynn, Upshur had nothing in his hands, never moved his arms, and did not lunge toward defendant. Upshur subsequently died from his injuries.

Defendant presented an entirely different version of events. He testified that on the night of October 11, 2007, while walking in the West Village, he saw Flynn sitting on a stoop. Flynn asked to use defendant's cell phone, and defendant handed the phone to Flynn. After using the phone, Flynn told defendant he was waiting for a return call. Fifteen minutes passed, and defendant became nervous and asked for his phone back. Eventually, Upshur arrived with two other men; Flynn greeted Upshur as if they were friends. Defendant again asked for his phone back. When the men did not respond, defendant believed they were going to take his phone.

The group dispersed, and Flynn and Upshur walked away together. Defendant followed them, demanding his phone back loudly so others could hear and hopefully call 911. Flynn refused to return the phone and both Flynn and Upshur told defendant to get away from them. Defendant again demanded the phone back. Upshur "spun around and lunged" at defendant in a "very sudden motion." Defendant saw a "glint" and thought Upshur had a knife in his hand. Defendant, who himself was carrying a knife that evening, testified that "[a]t this point, it [wa]s a robbery," and that "[i]t was very clear" that "these people were acting in concert to keep what was [his]." Defendant testified that fearing for his life, he blocked Upshur with his right hand, and with his left hand, grabbed his own knife, and "poked" Upshur once in the chest, killing him.

Based on defendant's testimony, the trial court decided to instruct the jury on the defense of justification under two separate theories: the use of deadly physical force to defend against the use or imminent use of deadly physical force (Penal Law § 35.15 [2] [a]), and the use of deadly physical force to defend against a robbery (Penal Law § 35.15 [2] [b]).[1] The jury ultimately found defendant guilty of murder in the second degree.On appeal, defendant argues that the trial court's initial and supplemental charges misstated the law on the use of deadly physical force to defend against a robbery. "In considering a challenge to a jury instruction, the 'crucial question is whether the charge, in its entirety, conveys an appropriate legal standard and does not engender any possible confusion' " (*People v Hill*, 52 AD3d 380, 382 [1st Dept 2008], quoting *People v Wise*, 204 AD2d 133, 135 [1st Dept 1994], *lv denied* 83 NY2d 973 [1994]). Where the court's charge creates undue confusion in the minds of the jurors, reversal is warranted (*Hill*, 52 AD3d at 382; *People v Rogers*, 166 AD2d 23 [1st Dept 1991], *lv denied* 78 NY2d 1129 [1991]).

Guided by these principles, we conclude that the court's instructions on the use of deadly physical force in defense against a robbery were prejudicially defective. Although defendant did not object to the court's erroneous charge in this regard, reversal is warranted in the interest of justice (*see People v Fuller*, 74 AD2d 879 [2d Dept 1980] [court's error in charge on use of force to defend against robbery warranted new trial in interest of justice]).

Subdivision (1) of Penal Law § 35.15 provides that, except under certain circumstances not relevant to this appeal, a defendant "may, subject to the provisions of subdivision two, use physical force upon another person when and to the extent he . . . reasonably believes such to be necessary to defend himself . . . from what he . . . reasonably believes to be the use or imminent use of unlawful physical force by such other person."

Subdivision (2) of Penal Law § 35.15 governs a defendant's use of deadly physical force, and provides that a defendant may use such force, under circumstances specified in subdivision (1), in three situations, two of which are pertinent here. Under paragraph (a), a defendant may use deadly physical force if he reasonably believes that the other person is using or about to use deadly physical force (except that the defendant may, under certain circumstances, have a duty to retreat). Under paragraph (b), a defendant also may use deadly physical force if he reason-

---

1. The People did not object to the court's decision to charge justification.

ably believes that the other person is committing or attempting to commit, among other crimes, a robbery.

In its main charge, the court instructed the jury that "[t]he only difference between the law of self-defense to repel a robbery as opposed to assault[2] [is that] in repelling the robbery, the person has no duty to retreat." This is an incorrect statement of the law because it ignores an additional critical difference between the two grounds for justification, namely, that deadly physical force may be permissible to defend against a robbery even if the alleged robber is using only physical force, and not deadly physical force (*see People v Fuller*, 74 AD2d at 879 ["a person is justified in using deadly physical force if he reasonably believed it necessary to use such force in order to resist his victim's imminent use of (mere) physical force against himself, in the course of a robbery attempt"]; *People v Davis*, 74 AD2d 607, 609 [2d Dept 1980] [jury should have been told that the defendant was justified in using deadly physical force if he reasonably believed it necessary to do so to resist the imminent use of physical force against him in the course of a robbery attempt]). The court's error was exacerbated when it repeated this erroneous statement in response to a jury note requesting further instructions on the defense of justification.

We reject the People's argument that the court's instructions, as a whole, conveyed the proper standard. Although parts of the charge were correct, the court misstated the law on the most critical issue in the trial—whether defendant was justified in using deadly physical force. The charge, even when viewed in its entirety, was inconsistent and confusing. Despite what the court stated at other points, the court's statement about the difference between the law of self-defense as applied to a robbery as opposed to an "assault" could have left the jury with the erroneous impression that defendant could not use deadly physical force to thwart a robbery unless deadly physical force was being used by the robber. Furthermore, when the jury asked to be reinstructed on the law of justification, the court repeated its error, causing further confusion (*see People v Hill*, 52 AD3d at 382 [reversal warranted where charge created undue confusion in the minds of the jurors]). Defendant's claim that he believed he was being robbed went to "the heart of [his] proffered defense" (*People v Soriano*, 36 AD3d 527, 529 [1st Dept 2007]), and the jury should have been permitted to evaluate that defense based on a proper legal instruction.

Contrary to the People's argument, the evidence at trial did

---

2. In its charge, the court used the term "assault" to refer to Upshur's purported use of deadly physical force.

not overwhelmingly disprove the defense of justification, particularly as it relates to the alleged robbery. The trial presented a credibility contest between defendant and Flynn as to the circumstances of Upshur's death. Defendant testified that he believed he was being robbed, and that Flynn and Upshur were working together to keep his cell phone. Defendant further testified that Upshur, whom defendant thought had a knife, lunged at him when he protested the taking of his cell phone and demanded its return. These facts, if accepted by the jury, could establish that defendant's actions were justified based on a reasonable belief that a robbery was taking place. The only contrary evidence as to what happened at the moment of the stabbing came from Flynn, who testified that defendant just stabbed Upshur with no provocation. Flynn, however, had been drinking that night, had a history of psychiatric problems, and admitted that he was at least committing a larceny against defendant and that Upshur was helping him to do so. Moreover, the medical evidence was equivocal and could have supported both the People's and defendant's version of events. Under these circumstances, the People's case can hardly be described as overwhelming. Accordingly, no harmless error occurred, and a new trial is warranted.[3]

Defendant also contends that his statements should have been suppressed because they were obtained in violation of his right to counsel. In connection with that claim, defendant argues that the court refused to permit his lawyer to give critical testimony at the suppression hearing. Sergeant Risorto, one of the supervisors assigned to the case, testified at the hearing that on October 16, 2007, defense counsel Glenn Garber, who had represented defendant in a prior matter, telephoned the police and asked to speak to Detective Terrizzi. When Risorto told him that Terrizzi was not available, according to Risorto, defense counsel then said: "I'm an attorney . . . and I don't want [defendant] questioned." Shortly after that phone conversation, Risorto told Terrizzi that defense counsel had called looking for him. Terrizzi testified that he could not remember if Risorto also had told him that defense counsel said he represented defendant. According to Terrizzi, defendant later told him that defense counsel did not represent defendant on this case. Defendant subsequently waived his *Miranda* rights and made statements to the police and prosecutor.

---

**3.** In light of our reversal in the interest of justice, we need not decide whether the court's repeated references to "commensurate" and "excessive" force were improper or confusing. We note, however, that those terms are not contained in Penal Law § 35.15 or the criminal jury instructions for that section.

In support of the contention that defendant should not have been permitted to waive his *Miranda* rights without counsel present, defense counsel sought to testify as to his conversation with Risorto. The court declined to allow counsel to testify. Defense counsel, whose testimony had been excluded, submitted an affirmation attesting that he told Risorto "that I represented [defendant], and that he was not to be questioned in my absence." The court denied the suppression motion, finding that defendant's right to counsel did not attach when defense counsel called the police and, therefore, the right to counsel had not been violated.

The Court of Appeals has held that "an attorney enters a criminal matter and triggers the indelible right to counsel when the attorney . . . notifies the police that the suspect is represented by counsel" (*People v Grice*, 100 NY2d 318, 324 [2003] [internal quotation marks omitted]). Once the police have reason to know that the suspect is represented by counsel in the case under investigation, the right to counsel cannot be waived unless the suspect does so in the presence of counsel (*id.* at 320-322). An attorney does not need to enter the case in person, but can communicate his representation to the police by phone, "at which point the police are required to cease all questioning" (*id.* at 321, citing *People v Gunner*, 15 NY2d 226, 231-232 [1965]).

Here, the court erred in precluding defense counsel from testifying about the critical conversation with Risorto. The police testimony, along with defense counsel's affirmation, raised questions as to what defense counsel actually said to Risorto and, in particular, whether defense counsel told Risorto that he "represented" defendant in the case for which defendant was to be questioned. The court should not have made a factual finding that implicitly accepted Risorto's account, without giving defendant the opportunity to challenge that account. The error, however, was harmless because the People did not use the statements during their case-in-chief. Therefore, reversal is not warranted on this basis. If, at the retrial, the People intend to introduce defendant's statements on their case-in-chief, a new suppression hearing is required (*see People v McCutheon*, 96 AD3d 580, 580-581 [1st Dept 2012]).

Defendant complains that the People improperly gained access to his prior sealed cases. Before defendant's arraignment in criminal court, the People applied, ex parte, for an order unsealing the case files related to two prior prosecutions of defendant, both of which involved a stabbing and claim of justification. One of the cases resulted in an acquittal after trial and the other ended with a grand jury dismissal. The motion court

(Berkman, J.) granted the motion for the limited purpose of allowing law enforcement to determine whether to arrest defendant, and ordered that any other use by the People would require a further application on notice to defense counsel. The People subsequently asked the trial court to unseal the cases for the People's use at trial. The trial court granted the motion to the limited extent of directing that the case files be provided to the court for an in camera determination of what may be turned over to the People if defendant testified.

The second unsealing order, issued after the criminal proceeding commenced, should have been denied (*see* CPL 160.50 [1] [d] [i], [ii]; *Matter of Katherine B. v Cataldo*, 5 NY3d 196, 203-205 [2005]). However, reversal on this ground is unwarranted because defendant suffered no prejudice. The trial transcript does not show that the People introduced any of the evidence contained in the unsealed records. Even if the first unsealing order was improper, defendant similarly suffered no prejudice. There is no support for defendant's speculative claim that the prosecutor reviewed the case files in violation of the limitation contained in that order. Nor is there any merit to defendant's claim that evidence from the records may have been presented to the grand jury. Our review of the grand jury minutes shows that no such evidence was introduced or discussed during the presentation.[4]

The verdict was not against the weight of the evidence. In light of our remand, we need not address defendant's remaining contentions. These claims involve issues unique to this trial, such as objections to the People's summation, or evidentiary issues that may or may not arise on retrial. Concur—Tom, J.P., Renwick, Richter, Feinman and Gische, JJ.

---

4. Defendant makes no other complaints on appeal about the grand jury presentation.