■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ELMER CASTILLO, Appellant. [33 NYS3d 58]—

Judgment, Supreme Court, New York County (Peter J. Benitez, J.), rendered January 12, 2012, convicting defendant, after a jury trial, of manslaughter in the first degree, and sentencing him to a term of 18 years, modified, on the law, to the extent of remanding for resentencing proceedings consistent with this decision, and otherwise affirmed.

Initially, there was overwhelming evidence supporting the jury's finding that the attack on May 8, 2009 by defendant and his accomplices was the cause of the victim's death on May 12, 2009. Eyewitnesses and surveillance video established that they hit the victim repeatedly in the head, including defendant's assault on him with a tire iron. The victim was also kicked in the face and thrown down an open basement stairway. He suffered severe injuries, specifically a fractured skull with bone fragments pushed into his brain, causing cerebral bleeding and swelling and a lack of oxygen to the brain, from which he died four days later.

The jury appropriately rejected the suggestion of the defense's expert that the victim had so recovered by his third day in the hospital that his death on the fourth day was caused not by his injuries but by a possible infection of unknown origin or a fall from his bed, since that testimony was unconvincing, if not speculative, particularly in view of the expert's acknowledgment that the injury was life-threatening and required emergency surgery. In any event, the jury's finding that the attack caused the victim's death was warranted by "the rule in New York that '[i]f a person inflicts a wound . . . in such manner as to put life in jeopardy, and death follows as a consequence of this felonious and wicked act, it does not alter its nature or diminish its criminality to prove that other causes cooperated in producing the fatal result. Indeed, it may be said that neglect of the wound or its unskillful and improper treatment, which were of themselves consequences of the criminal act, which might naturally follow in any case, must in law be deemed to have been among those which were in contemplation of the guilty party, and for which he is to be held responsible' " (*People v Pratcher*, 134 AD3d 1522, 1524 [4th Dept 2015], quoting *People v Kane*, 213 NY 260, 274 [1915]).

Defendant failed to raise any challenge to the court's charge regarding causation of death at a time when the court could have easily rephrased the instruction. The issue is therefore unpreserved for appellate review (*see* CPL 470.05 [2]). The claimed error does not fall within the "very narrow exception" discussed in *People v Thomas* (50 NY2d 467, 471 [1980]), as the dissent suggests. That narrow exception is only applicable "when the procedure followed at trial was at basic variance with the mandate of law prescribed by Constitution or statute" (*id.*). Here, as was the case in *Thomas*, preservation was necessary because defendant essentially claims that "a portion of the charge could, in the particular case, be interpreted as having a contrary effect" to the burden of proof charge that was

correctly stated by the court (*id.* at 472). Nor is the exercise of interest of justice jurisdiction warranted; defendant was not deprived of a fair trial (*see* CPL 470.15 [6] [a]). As an alternative holding, we consider the charge, viewed as a whole, to have properly conveyed the law regarding whether the assault was a sufficiently direct cause of the victim's death (*see People v Umali*, 10 NY3d 417, 426-427 [2008], *cert denied* 556 US 1110 [2009]; *People v Ladd*, 89 NY2d 893, 895 [1996]).

Defendant's argument that the prosecutor engaged in a pattern of improper remarks which deprived him of a fair trial is similarly unpreserved, as no objection was made at trial to any of the remarks of which he now complains, and we decline to review it in the interest of justice. As an alternative holding, on balance the prosecutor's remarks did not prejudice defendant, and did not have the cumulative effect of depriving defendant of a fair trial (*see People v D'Alessandro*, 184 AD2d 114, 119-120 [1st Dept 1992], *lv denied* 81 NY2d 884 [1993]).

Defendant's argument that his defense was in conflict with that of his codefendant such that a severance was necessary is also unpreserved, since defendant never sought severance at trial (*see People v Bernier*, 245 AD2d 137, 138 [1st Dept 1997], *lv denied* 91 NY2d 940 [1998]), and we decline to review it in the interest of justice. As an alternative holding, this argument lacks merit. The two defendants' defenses—that one was not there and that the other did not mean to inflict serious injury or death—"were not so irreconcilable as to require severance" (*People v Funches*, 4 AD3d 206, 207 [1st Dept 2004], *lv denied* 3 NY3d 640 [2004]). Moreover, since the proof that defendants acted in concert to commit the crimes charged was supplied by the same evidence, a balancing of defendant's rights against the interest of judicial economy warranted the joint trial (*see People v Mahboubian*, 74 NY2d 174, 183 [1989]).

Finally, we reject defendant's contention that his counsel's failure to preserve the foregoing claimed errors establishes an ineffective assistance claim. The record establishes that defendant's attorney mounted a competent defense in the face of a difficult case with powerful evidence of his client's guilt—indeed, defendant's attorney succeeded in obtaining an acquittal of the charge of second-degree murder, the most serious of the numerous charges and defendant was not prejudiced by the lack of preservation.

However, as the People concede, defendant is entitled to a youthful offender determination (*see People v Rudolph*, 21 NY3d 497 [2013]). The conviction for first-degree manslaughter, a class B felony (Penal Law § 125.20 [1]), does not disqualify

defendant from a youthful offender finding (*see* CPL 720.10 [2] [a]). Defendant had not previously been convicted of a felony or received youthful offender treatment; nor does his 2008 juvenile delinquency adjudication in Family Court for fifth-degree criminal possession of a controlled substance disqualify him from youthful offender adjudication (*see* CPL 720.10 [2] [b]-[c]; Family Ct Act § 301.2 [8]). Accordingly, we remand for a new sentencing proceeding, at which the court shall expressly decide whether to adjudicate defendant a youthful offender. Concur—Friedman, Saxe and Gische, JJ.

Tom, J.P., dissents in a memorandum as follows: Defendant and the two codefendants attacked and beat Jonathan Jimenez and threw him down an open basement stairway. Jimenez was taken to St. Barnabas Hospital in the Bronx, where he died four days later. Following the attack, defendants were arrested and charged with second-degree murder, first-degree manslaughter, and first and second-degree gang assault. During trial, a number of lesser assault offenses were submitted (first through third degree assault), all of which required proof of physical injury or serious physical injury.

The trial presented two sharply different theories as to the cause of the victim's death. The medical examiner testified for the prosecution that the victim's injuries, which were consistent with "blunt impact to the skull," were the "but for" cause of the victim's death notwithstanding any complications the victim suffered during his hospitalization. In contrast, defendant's medical expert testified that the victim had recovered from the head injury sustained during the alleged assault, and that complications attributable to hospital negligence were the sole causes of his death. In particular, defendant's expert noted that while in the hospital the victim's condition was improving and he appeared to be recovering from the head injury, but then he suffered a fall from his bed. Defendant's expert opined that the hospital was negligent in allowing him to fall but also in failing to repeat a CT scan of his head after the fall to make sure there was no injury, and in failing to swiftly treat the fever and infection which the victim developed within 24 hours after the fall. The expert also stated that the infection, which he believed was the cause of death, was likely caused either by the victim's fall from his bed or one of the intravenous catheters used on him.

Although there were various charges submitted to the jury, some of which only required proof of physical injury or serious physical injury, the court gave a single "charge of causation as being applicable to all the counts," lumping "death, physical

injury or serious physical injury" together to the jury. The jury ultimately found defendant guilty of manslaughter in the first degree. On appeal, defendant argues that the trial court's charge misstated the law on causation and relieved the People of their burden of proving defendant caused the death of Jimenez, an essential element of the crime of manslaughter, by requiring the prosecution only to prove that defendant's conduct was a sufficiently direct cause of the victim's injury relating to the lesser assault offenses.

Although defendant failed to preserve his challenge to the court's charge regarding causation of death, because the instructions relieved the People of their burden of proving causation of death, normal preservation requirements do not apply and the issue may be reviewed nothwithstanding the lack of preservation (*see People v Thomas*, 50 NY2d 467, 471-472 [1980]). In the alternative, I would consider the claim in the interest of justice (*see People v McTiernan*, 119 AD3d 465, 467 [1st Dept 2014]). Further, I conclude that the charge, viewed as a whole, failed to properly convey the law regarding whether the assault was a sufficiently direct cause of the victim's death (*see People v Umali*, 10 NY3d 417, 426-427 [2008], *cert denied* 556 US 1110 [2009]; *People v Ladd*, 89 NY2d 893, 895 [1996]), and thus a new trial is warranted.

"In considering a challenge to a jury instruction, the 'crucial question is whether the charge, in its entirety, conveys an appropriate legal standard and does not engender any possible confusion' " (*People v Hill*, 52 AD3d 380, 382 [1st Dept 2008], quoting *People v Wise*, 204 AD2d 133, 135 [1st Dept 1994], *lv denied* 83 NY2d 973 [1994]). Where the court's charge creates undue confusion in the minds of the jurors, reversal is warranted (*Hill*, 52 AD3d at 382; *People v Rogers*, 166 AD2d 23 [1st Dept 1991], *lv denied* 78 NY2d 1129 [1991]). Guided by these principles, I find that the court's instructions on causation were prejudicially defective.

A person is guilty of first-degree manslaughter when "[w]ith intent to cause serious physical injury to another person, he causes the death of such person or of a third person" (Penal Law § 125.20 [1]). In contrast, first through third degree assault and gang assault in the first and second degrees require the causation of either physical injury (third degree assault) or serious physical injury (first and second degree assault, gang assault in the first and second degrees) (Penal Law §§ 120.00, 120.05, 120.06, 120.07, 120.10).

In order to prove defendant was guilty of manslaughter in the first degree, the People must "at least, prove that the de-

fendant's conduct was an actual cause of death, in the sense that it forged a link in the chain of causes which actually brought about the death" (*People v Stewart*, 40 NY2d 692, 697 [1976]). The defendant's conduct must thus "be *a sufficiently direct cause* of the ensuing death before there can be any imposition of criminal liability" (*id.* [internal quotation marks omitted]). Causation of death is thus "an essential element which the People must prove beyond a reasonable doubt" (*id.*). Significantly, while a defendant will generally be criminally responsible for a victim's death notwithstanding negligent medical treatment, he will be relieved of liability where the "death can be attributed *solely* to the negligent medical treatment" (*People v Bowie*, 200 AD2d 511, 512 [1st Dept 1994], *lv denied* 83 NY2d 869 [1994]).

Similarly, proof of injury or serious physical injury is an essential element of the assault offenses (*see* Penal Law §§ 120.00, 120.05-120.07, 120.10).

Accordingly, the Criminal Jury Instructions (CJI) incorporate these principles, in a parallel fashion, with respect to causation of injury and causation of death, as follows:

"CAUSE OF INJURY . . .

"A person 'causes [physical or serious physical] injury' to another when that person's conduct is a sufficiently direct cause of such injury to another.

"A person's conduct is a sufficiently direct cause of such injury when: One, the conduct is an actual contributory cause of such injury; and two, when the injury was a reasonably foreseeable result of the conduct . . .

"A person's conduct is an actual contributory cause of [physical or serious physical] injury to another when that conduct forged a link in the chain of causes which actually brought about such injury—in other words, when the conduct set in motion or continued in motion the events which ultimately resulted in such injury.

"An obscure or merely probable connection between the conduct and the injury will not suffice.

"At the same time, if a person's conduct is an actual contributory cause of the injury to another, then it does not matter that such conduct was not the sole cause of the injury, or that a preexisting medical condition also contributed to the injury, or that the injury was not immediately apparent . . .

"Injury is a reasonably foreseeable result of a person's conduct when the injury should have been foreseen as being reasonably related to the actor's conduct. It is not required

that the injury was the inevitable result or even the most likely result . . .

"If a person inflicts injury on another, a reasonably foreseeable consequence of that conduct is that the victim will need medical or surgical treatment. It is no defense to causing the victim's injury that the medical or surgical treatment contributed to such injury. Only if the injury is solely attributable to the medical or surgical treatment and not at all induced by the inflicted injury does the medical intervention constitute a defense" (CJI2d[NY] Penal Law art 120, Causation [footnotes omitted]).

"CAUSE OF DEATH . . .

"A person 'causes the death' of another when that person's conduct is a sufficiently direct cause of the death of another.

"A person's conduct is a sufficiently direct cause of death when: One, the conduct is an actual contributory cause of the death; and two, when the death was a reasonably foreseeable result of the conduct . . .

"A person's conduct is an actual contributory cause of the death of another when that conduct forged a link in the chain of causes which actually brought about the death—in other words, when the conduct set in motion or continued in motion the events which ultimately resulted in the death.

"An obscure or merely probable connection between the conduct and the death will not suffice.

"At the same time, if a person's conduct is an actual contributory cause of the death of another, then it does not matter that such conduct was not the sole cause of the death, or that a preexisting medical condition also contributed to the death, or that the death did not immediately follow the injury . . .

"Death is a reasonably foreseeable result of a person's conduct when the death should have been foreseen as being reasonably related to the actor's conduct. It is not required that the death was the inevitable result or even the most likely result . . .

"And, it is not required that the actor have intended to cause the death . . .

"If a person inflicts injury on another, a reasonably foreseeable consequence of that conduct is that the victim will need medical or surgical treatment. It is no defense to causing the victim's death that the medical or surgical treatment contributed to the death of the victim. Only if the death of the victim is solely attributable to the medical or surgical treatment and not at all induced by the inflicted injury does the medical

intervention constitute a defense" (CJI2d[NY] Penal Law art 125, Causation [footnotes omitted]).

However, rather than reading these pattern jury instructions separately, the trial court effectively took the CJI charge for "Injury" and selectively added the word "death" thereto, and instructed the jury in one lumped instruction as follows:

"[E]ach of the counts that you will be asked to consider has as an element that the defendants caused a particular result. *A person causes physical injury or serious physical injury or death to another person when that person's conduct is a sufficiently direct cause of such injury to another.*

"A person's conduct is a sufficiently direct cause of such injury when the conduct is an actual contributory cause of such injury and when the injury was a reasonably foreseeable result of that conduct . . .

*"A person's conduct is an actual contributory cause of physical injury or serious physical injury or death to another when that conduct forged a link in the chain of causes which actually brought about such injury.*

"In other words, when the conduct set in motion or continued in motion the events which ultimately resulted in such injury. [A]n obscure or merely probable connection between the conduct and the injury will not suffice. At the same time, if a person's conduct is an actual contributory cause of the injury to another, then it does not matter that such conduct was not the sole cause of the injury or that a preexisting medical condition also contributed to the injury or that the injury was not immediately apparent . . .

"Injury is a reasonably foreseeable result of a person's conduct when the injury should have been foreseen as being reasonably related to the actor's conduct. It is not required that the injury was the inevitable result or even the most likely result.

"If a person inflicts injury on another, a reasonably foreseeable consequen[ce] of that conduct is that the victim will need medical or surgical treatment. It is no defense to causing the victim's injury that the medical or surgical treatment contributed to such injury. Only if such injury is solely . . . attributable to the medical or surgical treatment and not at all induced by the inflicted injury does the medical intervention constitute a defense." (Emphasis added.)

As is evident, adding to the confusion of the lumped-together charge, the court did not consistently add the word "death" to its set of instructions, in most cases omitting "death" and

discussing only causation of "injury." Notably, the trial court did not use the term "death" when addressing the impact of "medical or surgical treatment," which may have given the jurors an impression that improper medical treatment is irrevelant to the question of cause of death. Most concerning, however, is that in the two sentences emphasized above the court instructed the jury that, if it were to find causation of injury, then causation of death would also be proven. This is an incorrect statement of the law because the jury could of course simultaneously find causation of injury or serious physical injury but not causation of death. However, the charge on causation as given by the trial court could lead the jury to find defendant guilty of manslaughter in the first degree by merely finding defendant caused the victim's physical injury or serious physical injury.

Thus, the court's instructions as a whole did not convey the proper standard, created undue confusion in the minds of the jurors (*People v McTiernan*, 119 AD3d at 467), and had the effect of relieving the People of their burden of proving that defendant caused the victim's death as an essential element of the manslaughter count by requiring the People only to prove injury, and not death. Moreover, these instructions misstated the law on a critical issue at trial—whether the victim died as a result of the assault or solely because of his inadequate medical treatment. Indeed, while the evidence that defendant participated in the assault was overwhelming, the evidence that those injuries caused the victim's death was not, and the jury was faced with a battle of experts and a question of fact as to the ultimate cause of the victim's death. Consequently, the court's error essentially "gutted" defendant's causation defense (*People v Minor*, 111 AD3d 198, 205 [1st Dept 2013]). Hence, I reject the People's contention that the error was harmless.

Proof of negligent medical treatment will not relieve defendant's criminal responsibility for the subsequent death of the victim unless the intervening negligence is the sole proximate cause of death (*People v Bowie*, 200 AD2d at 512). The court's charge improperly linked injury and death in a confusing manner that undermined these principles. There was ample evidence to support defendant's position that the victim's death was caused by the hospital's negligent medical treatment of the victim.

Defendant's medical expert, Dr. Ronald Paynter, testified that the victim "was actually getting better," such that, by his third day in the hospital, "they were removing the sedation" and removed the "decompression tube" which had been reliev-

ing the pressure in his brain. At this point, the victim "appeared to be recovering from the head injury." After they "removed some of the sedation," however, he "fell out of bed, which is not supposed to happen in a hospital." Dr. Paynter stated that the hospital made "very little response" to the victim's fall. "[W]ithin 24 hours" of his fall, he "developed an infection" and "a very high fever" of 104 degrees. "[A]s a result of the fever," he "developed a very rapid heart rate." Dr. Paynter opined that "the treatment for the fever was slow by the hospital," and stated that the hospital "did not give aggressive intravenous fluid and aggressive antibiotic treatment, and it appeared that [the victim] succumbed to the infection." Notably, the evidence at trial supports the conclusion that the victim died from an infection and fever, and not directly from injuries to his head. The jury may have found defendant responsible for the victim's death due to the trial court's confusing charge.

Accordingly, it is my opinion that the judgment should be reversed, and the matter remanded for a new trial.

---

The decision and order of this Court entered herein on April 7, 2016 (138 AD3d 448 [2016]) is hereby recalled and vacated (*see* 2016 NY Slip Op 76010[U] [2016] [decided simultaneously herewith]).